Theodore H. CURTIS and
Marilyn B. Curtis

v.

H. Kenneth MAIN, Jr., et al.[1]

Supreme Judicial Court of Maine.

Argued Sept. 4, 1984.

Decided Oct. 23, 1984.

**1.** The plaintiffs' complaint appropriately names the Code Enforcement Officer, and the Town Councilmen of the Town of Kittery as defendants in their capacities as the municipal officers of the town. *See Fitanides v. Crowley,* 467 A.2d 168, 168 n. 1 (Me.1983) (citing *Inhabitants of the Town of Boothbay v. Russell,* 410 A.2d 554, 559 (Me.1980)).

Richard E. Dill (orally), Kittery, for plaintiffs.

McEachern & Thornhill, Duncan A. McEachern (orally), Kittery, for defendants.

Before McKUSICK, C.J., and NICHOLS, ROBERTS, VIOLETTE, WATHEN, GLASSMAN and SCOLNIK, JJ.

WATHEN, Justice.

The plaintiff-landowners, Theodore H. Curtis and Marilyn B. Curtis, appeal pursuant to M.R.Civ.P. 80B from the judgment of the Superior Court (York County) affirming a decision of the Town of Kittery Zoning Board of Appeals (the "Board") that denied the plaintiffs' administrative appeals and their variance applications. The plaintiffs raise three issues on appeal. First, the plaintiffs assert that the Board improperly denied their administrative appeals. Second, the plaintiffs assert that the Board improperly denied their variance applications. Third, the plaintiffs assert that the Board's denial of their administrative appeals and variance applications unconstitutionally deprived the plaintiffs of their property without just compensation. We deny the appeal.

In 1958, the plaintiffs bought lots 415 to 436 on Gerrish Island in Kittery. The lots were created by a plan recorded in 1950, ten years before Kittery enacted its first zoning ordinance. Kittery amended its 1960 Zoning Ordinance in 1977. The 1977 amended Ordinance created two restrictive zones, Rural Conservation and Resource Protection, and provisions for Shoreland Area Protection Zones, which affect the plaintiffs' land.

In 1980, the plaintiffs proposed to combine twelve of their single lots into five new lots (A, B, C, D, and E) for sale as residential lots. Each of the proposed lots lies between the Chauncey Creek and Tower Road. Lots A and B are contiguous, and Lot E is contiguous with property on

which the plaintiffs built a summer house in 1952.

The Board found that the minimum lot size for building a house where the plaintiffs' lots are located is 80,000 square feet.[2] None of the plaintiffs' proposed lots is larger than 38,500 square feet. The Ordinance requires that houses be set back a minimum distance from adjacent bodies of water and from roads. None of the plaintiffs' proposed plans meet the setback requirements for either restrictive zone. The Ordinance also requires that sewage systems be set back at least 100 feet from the high water mark or edge of the shoreline. Only proposed lot C is capable of meeting the Ordinance's sewage system setback requirement. For these reasons when the plaintiffs sought building permits from Kittery's Code Enforcement Officer (the "CEO"), their request was denied. In addition, the CEO disapproved of the proposed lots based on an Ordinance provision requiring the combination of contiguous lots held under the same ownership if the combination would result in a lot of conforming size.

The plaintiffs filed administrative appeals with the Board from the CEO's decision and also sought minimum lot size, house setback, and sewage system setback variances for each of their five proposed lots. On July 15, 1980 after a series of hearings, the Board unanimously denied the plaintiffs' five administrative appeals and by a 3–3 vote (four affirmative votes required for passage) denied the plaintiffs' five applications for variances. Then, pursuant to 30 M.R.S.A. § 2411 (1978 and Supp.1983–1984) and M.R.Civ.P. 80B, the plaintiffs appealed the Board's decision to the Superior Court. On January 19, 1984, after a hearing on the merits, the Superior

Court denied the plaintiffs' appeal because although the evidence could have supported a different ruling, the record indicated that the Board proceeded "in accordance with the appropriate rules. .... There was no error of law."

■ When, as in this case, the Superior Court acts as an intermediate appellate court reviewing the action of the Board, the Law Court will directly examine the record as it was developed before the Board. *See Driscoll v. Gheewalla,* 441 A.2d 1023, 1026 (Me.1982); *see also Nancy W. Bayley, Inc. v. Maine Employment Security Commission,* 472 A.2d 1374, 1377 (Me.1984); *Keith v. Saco River Corridor Commission,* 464 A.2d 150, 153 (Me.1983). The Law Court is bound to affirm the Board's decision if the Board's factual findings are supported by competent evidence, the Board applied the proper law, and the Board's application of the law to the facts was neither arbitrary nor capricious. *See Comeau v. Maine Coastal Services,* 449 A.2d 362, 368 (Me.1982) (quoting *Hall v. State,* 441 A.2d 1019, 1021 (Me.1982)); *see also Keith v. Saco River Corridor Commission,* 464 A.2d at 153; *Driscoll v. Gheewalla,* 441 A.2d at 1026. Furthermore, the plaintiffs had the burden at the Board level to prove they met all statutory requirements for the granting of variances. *See Sibley v. Inhabitants of the Town of Wells,* 462 A.2d 27, 30 (Me.1983); *Driscoll v. Gheewalla,* 441 A.2d at 1029.

I. *The plaintiffs' administrative appeals.*

■ Chapter I § V, B(1) of the Ordinance gives the Board the power to hear administrative appeals where the plaintiff alleges the CEO erred in enforcing the

**2.** It is unclear whether the requirements imposed by the provisions regulating a Rural Conservation Zone have effect within a Resource Protection Zone. The location and boundaries of the various zoning districts imposed by the Ordinance are established in a zoning map kept on file at Kittery's municipal office. A copy of the map indicates that Gerrish Island is in a Rural Conservation Zone and that the 100 foot

Resource Protection Zone applies to the shoreline of Gerrish Island, including the part of the Island fronting on Chauncey Creek. We need not decide whether the two zones overlap because each proposed lot lies within both zones. Accordingly each lot is subject to the 80,000 square foot area requirement mandated by the Rural Conservation Zone.

Ordinance. The defendants contend that since the plaintiffs' lots required variances before building permits could be issued, and since only the Board and not the CEO is authorized to issue variances, the CEO did not err in enforcing the Ordinance by denying permits to the plaintiffs. We agree.

Before the Board, the plaintiffs relied on an Ordinance provision, Chapter I § X, B(3), which permits the building of single family houses on single lots recorded prior to the effective date of the amended Ordinance, subject to the provision that contiguous nonconforming lots of the same ownership be combined. (Chapter I § I, D(8)).[3] The Board interpreted section I, D(8) of the Ordinance to be inapplicable to three of the proposed lots. Because the original lots in proposed lots A and B are contiguous and A and B are both less than 80,000 square feet (they would remain so after combination), the Board decided that A and B would have to be combined before permission could be issued to build under section I, D(6).[4] Similarly, the Board would require lot E to be combined with the contiguous lots which the plaintiffs currently use for their summer house.

Without ruling on the Board's interpretation of section I, D(8), we find that Chapter I § I, D(6), makes clear, that after combining contiguous lots, permission to build on undersized noncontiguous lots will be granted by the CEO, if, but only if, requirements other than area or width requirements conform to the regulations. Under any combination, the proposed lots would be undersized and would require variances for house and sewage system setbacks which are not part of area or width requirements and could, therefore, be obtained only through action of the Board.

 Without regard to sections I, D(8) and D(6), the plaintiffs contend that Chapter I § II, 3,[5] permits the Board to approve a change of property from an existing nonconforming use to another nonconforming use that is at least equally appropriate to the zoning district. The plaintiffs argue that although lots A, B, and E are undersized and could be combined with lots the plaintiffs own, the configuration proposed by plaintiffs is most economically sensible for residential real estate. In addition, still relying on section II, 3, the plaintiffs assert that the Board has the authority to vary setback requirements as part of an administrative appeal without following the stricter statutory variance standards.

The plaintiffs' reasoning is unpersuasive. Section II, 3 states that an "existing nonconforming use" can be changed to an "equally or more appropriate" nonconforming use. The plaintiffs' lots, however, are

3. Section I, D(8) reads in part:

 If two (2) or more contiguous lots, nonconforming as to size, are in the same ownership on the effective date of this ordinance, and a combination of such lots or a portion thereof, shall constitute a lot of conforming size, such combination shall be deemed to be a single conforming lot for the purposes of this ordinance and buildings and structures may be erected thereon, provided however, that they meet the requirements of the zone in which they are located, and only if the land and buildings are otherwise in full conformity with such provisions. If a combination of such lots results in a non-conforming lot, Par. D–6 shall apply.

4. Section I, D(6) reads:

 In any district, notwithstanding limitations imposed by other sections of this Code, single non-contiguous lots legally created when recorded may be built upon consistent with the uses in the particular district. These provisions shall apply even though such lots fail to meet the minimum requirements for area or width, or both, which are applicable in the district, provided that yard dimensions and other requirements, not involving area or width, or both, of the lot shall conform to the regulation for the district in which such lot is located. Variance of yard and other requirements not involving area or width shall be obtained only through action of the Board of Appeals.

5. Section II, 3 reads:

 An existing nonconforming use may be changed to another nonconforming use provided that the Board of Appeals shall find that the proposed use is equally or more appropriate to the zoning district than the existing nonconforming use.

not now being used in a nonconforming way. Rather, the plaintiffs are proposing nonconforming uses for lots which conform in their present use to the Ordinance. For such proposals, the plaintiffs may not rely on section II, 3 but must submit to normal variance procedure.

II. *The plaintiffs' variance applications.*

Chapter I § V B(3) of the Ordinance gives the Board power to grant variances "where, owing to special conditions, a literal enforcement of the provisions of this Code would result in unnecessary hardship." 30 M.R.S.A. § 4963(2)(C) (1978 and Supp.1983–1984) provides that a zoning board of appeals may grant a variance in strict compliance with the terms of § 4963(3). Subsection (3) reads:

*3. Variance.* A variance may be granted by the board only where strict application of the ordinance, or a provision thereof, to the petitioner and his property would cause undue hardship. The words "undue hardship" as used in this subsection mean:

*A.* That the land in question cannot yield a reasonable return unless a variance is granted;

*B.* That the need for a variance is due to the unique circumstances of the property and not to the general conditions in the neighborhood;

*C.* That the granting of a variance will not alter the essential character of the locality; and

*D.* That the hardship is not the result of action taken by the applicant or a prior owner.

A municipality may, in a zoning ordinance, adopt additional limitations on the granting of a variance, including, but not limited to, a provision that a variance may only be granted for a use permitted in a particular zone.

As noted previously, the burden was on the plaintiffs as variance applicants before the Board to prove by competent evidence that they met all the statutory requirements for the granting of variances. *See. Sibley v. Inhabitants of the Town of*

*Wells,* 462 A.2d at 30; *Driscoll v. Gheewalla,* 441 A.2d at 1029. The Board found that the plaintiffs met statutory requirements B and D: unique circumstances and hardship not the result of the applicant's action. Because the Board was unpersuaded that the plaintiffs' lots could not yield a reasonable return without variance approval and that variance approval would not alter the essential character of the locality, the Board concluded that the plaintiffs failed to prove that strict application of the Ordinance to their land would cause undue hardship.

■ After examining the record on the Board's decision that the plaintiffs failed to prove that absent setback and area requirement variances they would be denied a reasonable return on their land, we cannot conclude that the Board's decision was arbitrary or capricious. Reasonable return is not maximum return. *Barnard v. Zoning Board of Appeals of the Town of Yarmouth,* 313 A.2d 741, 749 (Me.1974). In *Barnard v. Zoning Board of Appeals of the Town of Yarmouth,* the Court said that although denial of a variance would prevent the plaintiff from *"increasing* the value of the land," denial would not make the land unmarketable. *See id.* The reasonable return prong of the undue hardship test is met "where strict application of the zoning ordinance would result in the practical loss of all beneficial use of the land." (citations omitted). *Thorton v. Lothridge,* 447 A.2d 473, 475 (Me.1982).

■ The plaintiffs relied on the testimony of a real estate agent that if variances were granted, each of the plaintiffs five proposed lots would be worth $25,000 to $30,000. The record does not address the value of the lots for other than residential use. Given the lots' position between water and road, the lots would be worthless as residential property without setback variances. The plaintiffs failed to prove, however, that other beneficial uses did not exist for their property. On the evidence presented the Board was not compelled to

# 1258

conclude that the undue hardship test had been satisfied.[6]

## III. *The taking issue.*

■ Apparently relying on both the Maine Constitution and the United States Constitution, the plaintiffs contend that because the Board's interpretation of the Ordinance precludes them from putting their property to a beneficial use, the Board's refusal to grant the administrative appeals or variance applications unconstitutionally deprived the plaintiffs of their property without just compensation. Zoning restrictions can amount to a taking of property even though title and some uses of the property remain with the owner. *See La-Pointe v. City of Saco*, 419 A.2d 1013, 1015 (Me.1980); *State v. Johnson*, 265 A.2d 711, 715 (Me.1970). However, "[n]o taking exists unless the property has been rendered substantially useless." *Sibley v. Inhabitants of the Town of Wells*, 462 A.2d at 31.

■ The only evidence of value was presented by the plaintiffs' real estate agent. The record contains no evidence of the value of the lots for use as nonresidential property. Although there was no clear evidence of potential nonresidential uses developed below, the plaintiffs did not prove the absence of nonresidential beneficial uses. The burden was on the plaintiffs to prove that the subsequently enacted ordinance and the Board's refusal to grant variances rendered their property substantially useless. *See Inhabitants of the Town of Boothbay v. National Advertising Co.*, 347 A.2d 419, 424–25 (Me.1975); *Barnard v. Zoning Board of Appeals of the Town of Yarmouth*, 313 A.2d at 747. Because the plaintiffs failed to meet this burden, we cannot find that the Board unconstitutionally deprived the plaintiffs of their property.

The entry must be:

Judgment affirmed.

All concurring.

**6.** We are not required to test the sufficiency of the Board's negative finding as to altering the essential character of the locality. If one of the requirements set forth in 30 M.R.S.A. § 4963(3) is found to be absent, the Board's denial will be sustained.