Walter PERRIN, et al.

v.

**TOWN OF KITTERY.**

Supreme Judicial Court of Maine.

Argued Feb. 1, 1991.
Decided May 20, 1991.

Duncan A. McEachern (orally), McEachern & Thornhill, Kittery, for appellant.

Gary H. Reiner (orally), Reiner & Bouffard, Kittery, for appellees.

Before ROBERTS, WATHEN, GLASSMAN, CLIFFORD, COLLINS and BRODY, JJ.

GLASSMAN, Justice.

The Town of Kittery (Town) appeals from a judgment of the Superior Court (York County, *Fritzsche, J.*) reversing the decision of the Town Zoning Board of Appeals (Board) denying the application of Walter and Rosemary Perrin for a wetland setback variance for the purpose of constructing a residence on their Lot 7B. The Perrins cross-appeal contending that the court erred in determining that the Perrins' application to the Code Enforcement Officer (CEO) for a building permit on Lot 7B was not a part of a pending proceeding within the purview of 1 M.R.S.A. § 302 (1989) and contending that the Town was collaterally estopped to argue that a wetland existed on Lot 7B. Because we agree with the Town's contention that the court erred in reversing the Board's determination that the Perrins failed to meet their burden of proof for the granting of a variance and find no merit in the Perrins' cross-appeal, we vacate the judgment as to Count II and affirm the judgment as to Counts I and III of the Perrins' complaint.

I.

In 1980 the Perrins purchased Lot 7, a two-acre lot located in Bartlett Farms, an approved subdivision in the Town's Rural Residence Zone, and thereafter constructed a residence on a portion of the lot. In September 1987 the Planning Board approved the Perrins' application to divide Lot 7 into two one-acre lots.[1] The portion of the lot designated as 7A was the site on which the Perrins had constructed their residence, and the portion designated as 7B was unimproved. At that time the Town's zoning ordinance required that a building in a Rural Residence Zone be set back a minimum of 100 feet from any "streams, water bodies and wetlands." In October 1987 the Town amended its ordinance concerning wetlands and classified wetlands into "coastal," "inland," and "transitional," *see* Ordinance Ch. I, § III,[2] and required that there be a minimum setback of 100 feet for coastal and inland wetlands and a 50–foot setback from transitional wetlands. Ordinance Ch. I, § VI(D)(2).

In April 1989 the Perrins applied to the CEO for a building permit to construct a single family dwelling on that portion of Lot 7 designated as 7B. In May 1989 the CEO denied the application on the ground that the site of the proposed structure was within 25 feet of a wetland. After a hearing on the Perrins' appeal, the Board concluded there were wetlands on the property and the proposed house would have to be 100 feet from these wetlands, and affirmed the denial of the building permit. The Perrins did not seek a judicial review of this decision. In August 1989 the Perrins filed an application for a variance from the wetland setback requirement. As a part of this proceeding the evidence presented to the Board on the appeal from the denial of the building permit was incorporated into the record requesting a variance. Following a public hearing at which no additional witnesses were presented on behalf of the

---

1. On May 14, 1987, the Planning Board approved an application of the Perrins to divide Lot 7. Pursuant to M.R.Civ.P. 80B, an abutter sought judicial review of this approval. By stipulation of the parties that the approval would be of no force and effect, the action was dismissed with prejudice, and the Perrins submitted to the Planning Board a revised plan for division of Lot 7, which was approved September 24, 1987. No review was sought of this approval.

2. Ordinance Ch. I, § III provides this definition of wetlands:

An area of land on which the ground surface is seasonally or commonly saturated with water and which consists of hydric soils. In the absence of conclusive evidence, wetlands will be identified by vegetational types usually as-

sociated with these conditions, and by the following physical conditions:

*Coastal*—Those lands contiguous to tidal waters and generally within the reach of normal high tide (elevation 6), but more specifically identified by the landward reach of salt-tolerant vegetation including, but not limited to, seaside goldenrod, salt hay grass, cordgrass and sea lavender.

*Inland*—Those lands of one acre or more which support a stable and functional wetland environment, whether natural or man-made, as indicated by vegetation including, but not limited to, cattails, rushes, horsetail, sensitive fern, alder or sumac.

*Transitional*—Areas of wetland vegetation less than one acre, which shall not include drainage ditches.

Perrins, the Board denied the variance on the ground that the Perrins "could not meet all four criteria for hardship for a variance."

By a complaint against the Town, filed in the Superior Court pursuant to M.R.Civ.P. 80B, the Perrins sought review of the decision of the Board and the CEO.[3] By Count I of their complaint the Perrins alleged that the application for a building permit was part of a pending proceeding at the time of the enactment in October 1987 of the provision of the Ordinance relating to wetlands and therefore the provision did not apply to Lot 7B. Count II alleged that the Board had improperly denied a variance to the Perrins. Count III alleged that the wetlands issue was determined by the Planning Board at the time of its consideration of the Perrins' application to divide Lot 7 and could not be reexamined by the CEO or the Board. After a hearing, the court granted a judgment to the Town on Counts I and III and to the Perrins on Count II, and the parties appeal.

## II.

■ On appeal from the judgment as to Count II the Town contends that the court erred in reversing the Board's decision to deny the Perrins' application for a variance. We agree. A zoning board of appeals may grant a variance from the strict application of a zoning ordinance only when that application would cause undue hardship as defined by 30-A M.R.S.A. § 4353(4) (Pamph. 1990), which provides in pertinent part:

A. The land in question cannot yield a reasonable return unless a variance is granted;

B. The need for a variance is due to the unique circumstances of the property and not to the general conditions in the neighborhood;

C. The granting of a variance will not alter the essential character of the locality; and

D. The hardship is not the result of action taken by the applicant or a prior owner.

■ The law is well established that the burden is on the variance applicant before the Board to prove by competent evidence that all of the statutory requirements for the granting of a variance have been met. See *Curtis v. Main*, 482 A.2d 1253, 1257 (Me.1984); *Sibley v. Inhabitants of the Town of Wells*, 462 A.2d 27, 30 (Me.1983); *Driscoll v. Gheewalla*, 441 A.2d 1023, 1029 (Me.1982). In reviewing the Board's action, the Superior Court was bound, as are we, to affirm the Board's decision unless the evidence before the Board would compel a positive finding that the applicant had established undue hardship by *all four* of the criteria set forth in section 4353(4)(A)–(D). See *Tompkins v. City of Presque Isle*, 571 A.2d 235, 236 (Me.1990). When acting in direct judicial review, a court may not make findings independent of those explicitly or implicitly found by the Board or substitute its judgment for that of the Board. *Id., Driscoll v. Gheewalla*, 441 A.2d at 1029. "The reasonable return prong of the undue hardship test is met 'where strict application of the zoning ordinance would result in the practical loss of all beneficial use of the land.'" *Curtis v. Main*, 482 A.2d at 1257 (quoting *Thornton v. Lothridge*, 447 A.2d 473, 475 (Me.1982)). We have repeatedly recognized that a reasonable return is not the maximum return. *See, e.g., Marchi v. Town of Scarborough*, 511 A.2d 1071, 1073 (Me. 1986); *Leadbetter v. Ferris*, 485 A.2d 225, 227 (Me.1984).

■ In the instant case, to satisfy the first prong of undue hardship the only evidence before the Board was that the application of the wetland setback would prevent the Perrins from building another residential structure on that portion of Lot 7 designated as 7B. The record does not address the value of Lot 7B if used for the construction of a residence nor its value if

---

3. The Perrins complaint was in five counts. Counts IV and V sought a declaration that portions of the Ordinance were unconstitutional. By order of the court, these counts were separated from Counts I, II, and III. Pursuant to M.R.Civ.P. 54(b) the court directed entry of a final judgment on these three counts.

used for other purposes, including its use as an unimproved lot contiguous to Lot 7A on which the Perrins had constructed their residence. *See Sibley v. Inhabitants of the Town of Wells,* 462 A.2d at 31; *Barnard v. Zoning Bd. of Appeals,* 313 A.2d 741, 747, 749 (Me.1974); *cf. Marchi v. Town of Scarborough,* 511 A.2d at 1073 (no reasonable return from unbuildable lot where applicant is *not* the abutting owner). The Perrins failed to prove that beneficial uses did not exist for Lot 7B other than its use for the construction of a residence. On the evidence presented to it the Board was not compelled to conclude that the Perrins had satisfied the first prong of the undue hardship test. Accordingly, we need not determine whether the Perrins met their burden of proof as to the remaining three prongs of that test. *See* 30–A M.R.S.A. § 4353(4)(A)–(D).

### III.

■ By their cross-appeal from the judgment as to Count I the Perrins contend that the building permit application is a part of the subdivision approval process and, accordingly, under the provisions of 1 M.R.S.A. § 302 (1989)[4] the wetlands provisions of the zoning ordinance enacted in October 1987 cannot be applicable to the proposed construction on Lot 7B. We find no error in the trial court's determination that the Perrins' application for a building permit was a separate proceeding from the Perrins' previous application for the division of Lot 7 into two lots, and that since the application for the building permit was made after the effective date of the new wetlands requirements, the Board properly affirmed the CEO's denial of a building permit to the Perrins. *See Larrivee v. Timmons,* 549 A.2d 744, 746 (Me.1988).

■ Nor do we find any error in the trial court's determination as to Count III that neither the CEO nor the Board was collaterally estopped from determining whether wetlands existed on Lot 7B. The Perrins

rely on a statement, made at the May 14, 1987 hearing on their initial application to the Planning Board for a division of Lot 7 by the Town Planner, to the effect that Lot 7 was not at that time designated as a wetland. It is clear from this record that the Planning Board did not at any time, either in response to the Perrins' first[5] or second application to it, make any factual finding on this issue or address the issue in its decision. *See Spickler v. York,* 505 A.2d 87, 88 (Me.1986) (no collateral estoppel where issue not litigated on its merits and resolved by a valid final judgment in a prior action between the parties or their privies).

The entry is:

Judgment as to Counts I and III affirmed. Judgment as to Count II vacated. Remanded to the Superior Court for entry of a judgment affirming the decision of the Kittery Zoning Board of Appeals.

ROBERTS, WATHEN, CLIFFORD and COLLINS, JJ., concur.

BRODY, Justice, dissenting in part.

I concur with the Court's opinion as to Counts I and III of the Perrins' complaint, but I must respectfully dissent as to Count II. Because I am persuaded that the Perrins produced sufficient evidence before the Board to carry their burden of proof on the variance issue, I would affirm the Superior Court's judgment as to Count II as well.

The Court concludes that the Perrins failed to prove that beneficial uses did not exist for Lot 7B other than its use for construction of a residence. I disagree. When a variance applicant demonstrates that, absent the variance, the land in question is unsuitable for all uses permitted by the zoning ordinance, the burden of negating the possibility of a reasonable return is met. *See Barnard v. Zoning Bd. of Appeals,* 313 A.2d 741, 749 (Me.1974). As the record makes abundantly clear, all but one

---

4. Section 302 provides in pertinent part that "... proceedings pending at the time of the passage, amendment or repeal of an ... ordinance are not affected thereby."

5. The Planning Board's approval of the Perrins' first application was stipulated by the parties to be of no effect. *See* I, *supra* n. 1.

of the permitted uses in the Rural Residence Zone would be precluded by the wetland setback requirement. The other use permitted in the zone, public open space recreational use, is not at issue. "While an applicant for a variance must negative the economic viability [of] uses permitted by the ordinance, it is not necessary that he demonstrate that no reasonable return is possible from special permit uses or uses of a quasi public nature." 3 R. Anderson, *American Law of Zoning* § 20.18, at 421 (3d ed. 1986). The Perrins therefore met their burden of negating the possibility of a reasonable return from all other permitted uses for Lot 7B.

Nevertheless, the Court holds that the Perrins failed to negate the possibility of a reasonable return from their use of Lot 7B "as an unimproved lot contiguous to Lot 7A on which [they] had constructed their residence." The Court misinterprets our decision in *Marchi v. Town of Scarborough*, 511 A.2d 1071 (Me.1986), and inappropriately equates *non*use with *beneficial* use. In *Marchi*, we found the absence of any other beneficial use for a substandard lot to be fully established where the record revealed that the property in question was strictly confined to residential use, was unbuildable unless the variance was granted, and the applicant was "not an abutting owner." *Id.* at 1073. In apparent reliance on this language, the Court seizes upon the distinction that the Perrins are the owners of the adjacent lot to support its holding.

This distinction is meaningless in the context of this case. The rationale behind the abutting-owner distinction is that " '[a]dministrative relief is not warranted *where the owner of contiguous substandard lots can solve his own problem by combining them* to meet the minimum requirements of the zoning regulations.' " *Sibley v. Town of Wells*, 462 A.2d 27, 31 (Me.1983) (quoting 3 R. Anderson, *supra*, § 18.54, at 291 (2d ed. 1977)) (emphasis added). That rationale does not apply here. Despite the Court's repeated mischaracterization of Lot 7B as merely a portion of Lot 7, the fact remains that Lot 7B is a separate, approved, conforming lot that cannot be made buildable simply by recombination with Lot 7A, which has already been improved. ·

Nor do any of the cases cited by the Court support its conclusion to the contrary. In *Sibley*, for example, we upheld the denial of a variance because the applicants owned two contiguous substandard lots that could be combined to allow construction without violating the sideline setback requirements of the ordinance. Similarly, in *Barnard*, we affirmed the denial of a variance because the applicant owned a single large lot that she sought to subdivide into two lots of substandard size in order to build a second house. In *Marchi*, on the other hand, we vacated the denial of a variance because there, as here, the applicant owned only one substandard lot that was unbuildable unless the variance was granted.

The record reveals that the Perrins can build no house at all on Lot 7B unless a variance is granted. The record also establishes the absence of any other beneficial use for Lot 7B. On this evidence, the Board was compelled to conclude that the Perrins satisfied the first prong of the hardship test by proving that strict application of the wetland setback requirement would deprive them of a reasonable return.

The Perrins also presented sufficient evidence before the Board to carry their burden of proof on the remaining three prongs of the hardship test. First, they established that their lots are the only one-acre parcels in a section of Bartlett Farms consisting of two-acre and larger parcels. Even if wetlands permeate the entire area, as the Town contends, the Perrins showed that their need for a variance is nonetheless due to the uniquely smaller size of Lot 7B that makes the setback requirement impossible to meet. Accordingly, the Board could not rationally have found on the basis of the evidence before it that the Perrins' need for a variance was based solely on general conditions in the neighborhood.

Second, the record reveals, and the Board found, that the Perrins' lot is a conforming lot in the Rural Residence Zone

and that the proposed construction would be a two-story home measuring forty-six feet by twenty-four feet. The record also shows that the Perrins were seeking no more than an area variance, that is, a variance not involving a use prohibited by the zoning ordinance. It is inconceivable that the Board could have found that the addition of a single-family home in a subdivision of single-family homes would alter the essential character of the locality.

Finally, although section 4353(4)(D) states that hardship that is "the result of action taken by the applicant" is not undue hardship as required to be shown for a variance, the mere fact that the Perrins sought and obtained approval to subdivide Lot 7 is not determinative. To constitute self-created hardship within the meaning of the statute, the hardship must result from action taken by the applicant *with notice* of the zoning restriction that gives rise to the hardship. *See, e.g., Sibley v. Town of Wells,* 462 A.2d at 31 (a landowner may not be granted a variance on the grounds of undue hardship when he purchases the land with actual or constructive knowledge of the zoning restrictions). The record shows that when the Perrins applied for resubdivision approval in May of 1987, they had no notice of the wetland setback requirements to be enacted five months later.

In fact, until the Town amended its zoning ordinance relative to required minimum setbacks from wetlands in October of 1987, there was not even a wetland on Lot 7B that would require a setback. The amended ordinance defined the term "wetlands" for the first time and also classified wetlands as "coastal," "inland," and "transitional." As a result of the new definitions, a seasonally wet drainage ditch crossing Lot 7B became for the first time either an inland or transitional wetland. Furthermore, the Perrins received resubdivision approval from the Town Planning Board *before* the wetlands ordinance was enacted. Clearly, the hardship to be suffered by the Perrins unless a variance is granted cannot be said to be the result of their own action, and the Board was compelled to conclude that the Perrins met their burden on this prong of the hardship test as well.

Accordingly, the Superior Court did not err in reversing the decision of the Board on the ground that the Perrins produced sufficient evidence to meet all of the statutory prerequisites for obtaining a variance. I would therefore affirm the court's judgment on Count II of the Perrins' complaint.