Walter L. PEPPERMAN, II

v.

TOWN OF RANGELEY.

Supreme Judicial Court of Maine.

Argued Jan. 4, 1995.

Decided May 31, 1995.

Paul F. Macri (orally), Berman & Simmons, P.A., Lewiston, for plaintiff.

Stephen E.F. Langsdorf (orally), Preti, Flaherty, Beliveau & Pachios, Augusta, for defendants.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, DANA and LIPEZ, JJ.

LIPEZ, Justice.

Walter L. Pepperman, II appeals from the judgments entered in the Superior Court (Franklin County, *Perkins, A.R.J.*) affirming the decisions of the Town of Rangeley Board of Appeals (hereinafter the "Board") denying his administrative appeal and his request for a variance. We vacate the judgment of the Superior Court affirming the Board's denial of the administrative appeal and remand with instructions to dismiss that appeal. We af-

firm the judgment affirming the denial of the variance.

### Background

Pepperman hired a contractor, Charles Cooke, to build a lean-to on his 49–acre parcel in Rangeley. With Pepperman's authorization, Cooke obtained a building permit from the town code enforcement officer (the CEO) in June 1991. The shelter was constructed during the period from June 19 to 30, 1991, at a cost of almost $5000. The CEO conducted a post-construction inspection in July 1991. Although the parties dispute whether the CEO indicated to Cooke after that inspection that there may be a problem with the placement of the lean-to within the 20 foot rear setback, the CEO issued no formal notice to Pepperman at that time. Pepperman made further improvements to the land after the inspection. On October 19, 1992, the CEO formally notified Pepperman that the shelter was in violation of the setback requirement and demanded that he "move the illegal structure to such extent as may be necessary to meet the requirements of the ordinance with respect to setbacks." On November 3, 1992, the CEO sent another letter to Pepperman informing him that if the structure was not moved "within 7 days of the notice," the CEO would be forced to "initiate legal proceedings" against him.

On November 25, 1992, Pepperman filed two documents with the Board. The first document was simply designated "an appeal" on the form provided by the town. The appeal alleged as the error subject to appeal the determination of the CEO that there was a setback violation. The second document was an application for a "variance" which sought permission to locate any portion of the lean-to within the 20 foot setback "as situated." The Board denied both of Pepperman's claims for relief.

### The Administrative Appeal

The statute authorizing the establishment of a board of appeals states that "[t]he board of appeals shall hear appeals from any action or failure to act of the official or board responsible for enforcing the zoning ordi-

nance ..." 30–A M.R.S.A. § 4353 (Pamph. 1994). The statute further specifies that the board of appeals "is governed by section 2691," which contains a more detailed jurisdictional statement:

> Any municipality establishing a board of appeals may give the board the power to hear any appeal by any person, affected directly or indirectly, from any decision, order, regulation or failure to act of any officer, board, agency or other body when an appeal is necessary, proper or required. No board may assert jurisdiction over any matter unless the municipality has by charter or ordinance specified the precise subject matter that may be appealed to the board and the official or officials whose action or non-action may be appealed to the board.

30–A M.R.S.A. § 2691(4) (Pamph.1994). Consistent with this statutory provision, section 8C of the Rangeley Zoning Ordinance authorizes the Board:

> To hear and decide appeals where it is alleged[ ] there is an error in any order, requirement, decision, or determination by the Code Enforcement Officer or Planning Board in the enforcement of this Ordinance. The action of the Code Enforcement Officer or Planning Board may be returned to them for reconsideration by the Board of Appeals by a majority vote of those present and voting except that there must be a minimum of three (3) votes in favor of reconsideration.

The Board of Appeals acted pursuant to section 8C in hearing Pepperman's appeal from the determination of the CEO that his lean-to violated the setback provisions of the ordinance.

The Rangeley zoning ordinance also contains a provision that deals specifically with violations of the ordinance. Pursuant to section 2C, if the CEO determines that any provision of the ordinance is being violated.

> he shall notify in writing the person responsible for such violation, indicating the nature of the violation and ordering the action necessary to correct it, including discontinuance of illegal use of land, buildings, structures, or work being done, re-

moval of illegal buildings or structures, and abatement of nuisance conditions.

Section 2C further specifies what the municipal officers can do if the notification from the CEO does not result in an abatement of the violation:

When the above action does not result in the correction or abatement of the violation or nuisance condition, the Municipal Officers, upon notice from the Code Enforcement Officer, are hereby authorized and directed to institute any and all actions and proceedings, either legal or equitable, including seeking injunctions of violations and the imposition of fines, that may be appropriate or necessary to enforce the provisions of this Ordinance in the name of the municipality.

In her notification letters to Pepperman dated October 19 and November 3, 1992, the CEO specifically referred to Section 2C of the zoning ordinance as the source of her authority for the order that he move the lean-to. Consistent with this provision of the ordinance, the CEO also advised Pepperman that his failure to move the structure could lead to legal proceedings initiated by the Board of Selectmen. In a subsequent letter of November 13, 1992, the CEO advised Pepperman that "if you wish to appeal the decision and order from this office dated November 3, 1992 you have by ordinance 30 days to do so to the Board of Appeals on forms you may request from this office." The CEO went on to advise Pepperman that "if you allege there is an error in the decision and order you would make an Administrative Appeal." She further stated that "if you have not filed the appeal within the specified time this office will proceed with enforcement action."

■ The enforcement provisions of the ordinance do not provide for an administrative appeal to the Board of the CEO's violation determination. To the extent that the Town, acting pursuant to Section 8C of the ordinance, chose to permit an administrative appeal of the violation determination of the CEO, the role of the Board was advisory only. For example, if the Board had acted favorably on Pepperman's administrative appeal, the Board could only recommend that the CEO reconsider her violation determination. If the CEO continued to believe that Pepperman was in violation of the ordinance despite the position of the Board, she would notify the municipal officers of the violation and recommend that they institute an enforcement action on behalf of the Town. By contrast, the role of the Board in the variance process is not advisory. If the Board had acted favorably on Pepperman's variance appeal, the CEO could no longer assert that Pepperman's lean-to violated the ordinance, and the only recourse of the municipal officers would have been the filing of an appeal in the Superior Court from the decision of the Board.[1]

■ The fact that the Board denied Pepperman's administrative appeal does not change the advisory nature of that determination. The Board's denial was nothing more than another fact for the municipal officers to consider in deciding whether to institute an enforcement action to abate the violation. Since that denial had no legal consequences itself, the denial by the Board was not subject to judicial review by the Superior Court.

Although the Town recognized the advisory nature of the Board's denial of Pepperman's administrative appeal, it chose to oppose Pepperman's appeal to the Superior Court on the merits rather than seek its dismissal.[2] The Town also filed a Rule 80K

1. Variances are usually sought before the construction of a project. The grant of the variance means that the CEO can issue the building permit and the construction can commence. In this case Pepperman was given an opportunity to seek a variance after the construction had already occurred. The grant of the variance therefore would mean that Pepperman's lean-to was not in violation of the ordinance, and there would be no basis for an enforcement action. In addition, Pepperman would be entitled to the certificate of occupancy that was denied to him because of the alleged violation.

2. At the 80B hearing before the Superior Court, counsel for the Town observed that "where the CEO has made a determination of a violation, then the Board of Appeals has an opportunity to review the CEO's determination if a landowner appeals, and all under the ordinance the Board has the power to do is, if three people vote to do so, they can send it back to the CEO for reconsid-

land use complaint in the District Court (*Rangeley v. Pepperman*, Docket No. 94-LU-1) only after the Superior Court affirmed the Board's decision denying Pepperman's appeal.[3] That 80K complaint is the legal action contemplated by Section 2C of the Rangeley ordinance if a landowner refuses to correct a violation in response to an order from the CEO. Although that action was stayed pending the outcome of this appeal, the town acknowledges in its brief that "[r]egardless of how this Court rules, the Town must still prosecute the 80K action to enforce compliance with its zoning ordinance and cause Pepperman to move the offending structure." Moreover, the Town conceded at oral argument that the determination by the Board in the administrative appeal that Pepperman's lean-to violated the setback requirements of the ordinance would have no collateral estoppel effect in the 80K proceeding.[4]

In short, we are now asked to render a decision whose only legal significance would be the elimination of the stay on a pending 80K action which is probably a prelude to another appeal on the same dispute now before us. We decline to engage in such a meaningless act. The advisory decision of the Board denying Pepperman's administrative appeal should not have been reviewed by the Superior Court. The Town should have sought a dismissal of that part of the complaint, and the Superior Court should have

obliged with the order of dismissal we now direct it to enter.

### The Variance

 In order to grant a variance, the Board had to find that compliance with the zoning ordinance would have created undue hardship for Pepperman. 30-A M.R.S.A. § 4353(4) (Pamph.1994). *Id.* An undue hardship involves four criteria: (1) the land cannot yield a reasonable return without a variance, (2) the need for a variance is attributable to the unique character of the property and not to general environmental conditions, (3) the granting of a variance will not alter the essential character of the area, and (4) the hardship is not the result of action taken by the applicant or a prior owner. *Id.* We will affirm the Board's decision "unless the evidence before the Board would compel a positive finding that the applicant had established undue hardship by *all four* of the criteria set forth in section 4353(4)(A)–(D)." *Perrin v. Town of Kittery*, 591 A.2d 861, 863 (Me.1991). *See also Sibley v. Town of Wells*, 462 A.2d 27, 30 (Me.1983) ("The Superior Court was bound, as is this court, to affirm the Board's denial of the requested variances unless that denial was unlawful, arbitrary, capricious, or unreasonable.").

 In addressing the reasonable return prong of the undue hardship test, Pepperman claimed that moving the shelter would eliminate the view he had cleared in front of it,

---

eration. And that's really all that the Board has the power to do." In its brief submitted to us on this appeal, the Town made a similar observation:

> Neither the CEO nor the Board has any enforcement powers to cause a property owner to comply with an ordinance or to assess a fine. To actually enforce a land use violation against a property owner, the Town must bring an action pursuant to Rule 80K of the Maine Rules of Civil Procedure in District Court. The Code Enforcement Officer and other municipal officials are authorized to bring Rule 80K actions on behalf of the municipality. The sole purpose of section 8(c) of the zoning ordinance is to provide the property owner an opportunity to question the CEO's determination and ask that the Board of Appeals remand to the CEO for reconsideration.

The Town did not follow this insight to its logical conclusion in argument before the Superior Court and request that the Court dismiss the

appeal from the Board's denial of Pepperman's administrative appeal.

3. M.R.Civ.P. 80K provides in pertinent part:

 (a) **Applicability.** Except as otherwise provided in this rule, these rules *shall apply to proceedings in the District Court involving alleged violations of land use laws and ordinances*, whether administered and enforced primarily at the state or the local level, including but not limited to, those statutes, ordinances, codes, rules, and regulations set forth in 4 M.R.S.A. § 152(6).

 (Emphasis added).

4. The doctrine of collateral estoppel, if applicable, would bar the parties from relitigating this issue in the 80K proceeding on the ground that the issue had been fully and finally litigated before the Board. *See S.H. Nevers Corp. v. Husky Hydraulics, Inc.*, 408 A.2d 676, 678–79 (Me. 1979).

and that the title to the property would be unmarketable if the Board determined that there was a setback violation. The Board heard other testimony that moving the shelter would not necessarily eliminate the view. Given the location of the lean-to on a 49–acre parcel, there was certainly no evidence before the Board that compelled a conclusion that compliance with the rear setback requirement would deprive Pepperman of all beneficial use of his land. *See Power v. Town of Shapleigh*, 606 A.2d 1048, 1050 (Me. 1992) (finding that property owner's assertion that without a variance the property would not yield reasonable return did not require zoning board to issue a variance), *Perrin v. Town of Kittery*, 591 A.2d at 863 ("[A] reasonable return is not the maximum return.").

Because an applicant must satisfy all four criteria of the undue hardship test, we need not review Pepperman's remaining assertions in support of his variance application. *See Perrin v. Town of Kittery*, 591 A.2d at 864. We affirm the Superior Court's decision affirming the Board's denial of the variance.

The entry is:

Judgment affirming the denial of a variance affirmed. Judgment affirming the denial of the administrative appeal vacated. Remanded with direction to dismiss the appeal of the denial of the administrative appeal.

All concurring.