STATE OF MAINE

KENNEBEC, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. AP-03-52

DAVID A. LEONARD
And CATHY J. LEONARD,

Plaintiffs

v.

TOWN OF WINTHROP, et al.,

Defendants

DECISION AND ORDER

NOV 5 2004

This matter is before the court on complaint for review of governmental action in accordance with M.R. Civ. P. 80B. This case springs from a good faith attempt by the Town of Winthrop ("Winthrop") to resolve a dispute between neighbors regarding access to a lot just outside of an approved subdivision. In an attempt to resolve this matter, the Winthrop Planning Board ("Board") amended the subdivision ordinance, adding a lot and extending and reclassifying a driveway. Plaintiffs challenge the actions of Winthrop, the effects of these actions and the constitutionality of the ordinance itself.

The five lot Vista Heights Subdivision was approved by Winthrop's Board on October 17, 1988. This subdivision included lots designated on Winthrop's tax map as 23, 23A-1, 23A-2, 20 and 21. Pertinent to this matter are lots 23A-1, 23A-2 and lot 19A which was not a part of the original subdivision, but has been added by the Board decision under review.[1]

According to the 1988 plan, access to lot 23A-2 was via deeded right of way across lot 23A-1 considered by all to be a driveway. Some time after the subdivision

---

[1] Plaintiffs own lot 1 of the subdivision, above described as lot 23A-1.

was approved, Richard Calcagni acquired a fifty-foot wide easement over lots 23A-1 and 23A-2 and built a road continuing the driveway from lot 23A-1, across lot 23A-2 to access a house he built on lot 19A and sold to defendants Gregory and Ronda Strumfeld.

Beginning in 1994, Winthrop began correspondence with Mr. Calcagni concerning access to the lot 19A via this easement. In 2000, Winthrop informed Mr. Calcagni that the right-of-way he had constructed over lot 2 (apparently lot 23A-2) is not shown on the approved subdivision plan and should not be used to access any other houses he was building on his land on lot 19. Winthrop noted that it did not intend to revoke the building permit for the house on lot 19A, which was already occupied, as it would be "unduly harsh."

In 2001, Mr. Calcagni applied to the Winthrop Board for an after-the-fact amendment to the subdivision plan. Before final action on Mr. Calcagni's application, defendants James and Deborah Remley (owners of lot 23A-2) submitted an application that was essentially a compromise proposal on February 24, 2003. This proposal would add lot 19A in the Vista Heights Subdivision and to allow access to lot 19A via Mr. Calcagni's easement but not to allow access to any lots beyond the Strumfeld lot (19A). On the same night, August 6, 2003, the Board turned down Mr. Calcagni's, application and approved the Remley's application. A "request for waiver" of road standards contained in the subdivision ordinance was submitted by the Remleys on May 26, 2003, requesting that two hundred and twenty seven feet of their driveway be deemed a "private minor road" and left in its present condition, was also approved on the recommendation of the Town Manager on August 6, 2003.

As there is no avenue of appeal from a decision of the Winthrop Planning Board under the Winthrop Subdivision Ordinance, *see* Subdivision Ordinance of the Town of

Winthrop, Article VI(E), R. page 36, plaintiffs timely filed an 80B complaint in this court. Following a number of enlargements of time, an amended complaint, adding the owners of lots 23-A (the Remleys), lot 19A (the Strumfelds) and the owner of lot 19 and the easement (Mr. Calcagni) was filed on November 14, 2003, seeking vacation of the Board's decision of August 6, 2003, amending the Vista Heights Subdivision Plan[2] and such further relief as the court deems appropriate.

Plaintiffs timely filed a brief on December 5, 2003, and Winthrop timely filed its brief on January 7, 2004. Parties in interest Gregory and Ronda Strumfeld adopted the brief filed by Winthrop.

On appeal, this court independently examines the record and reviews the decision of the municipality for "error of law, abuse of discretion, or findings not supported by substantial evidence in the record." *Yates v. Town of Southwest Harbor*, 2001 ME 2, ¶ 10, 763 A.2d 1168, 1171 (*citing Sproul v. Town of Boothbay Harbor*, 2000 ME 30,8, 746 A.2d 368, 372. The substantial evidence standard requires the court to examine the entire record "to determine whether on the basis of all the testimony and exhibits before the [board] it could fairly and reasonably find the facts as it did." *Ryan v. Town of Camden*, 582 A.2d 973, 975 (Me. 1990) (quoting *Seven Islands Land Co. v. Maine Land Use Regulation Comm.*, 450 A.2d 475, 479 (Me. 1982)).

The court is not permitted to "make findings independent of those explicitly or implicitly found by the Board or [to] substitute its judgment for that of the Board." *Perrin v. Town of Kittery*, 591 A.2d 861, 863 (Me. 1991). "The Board's decision is not wrong because the record is inconsistent or a different conclusion could be drawn from it." *Twigg v. Town of Kennebunk*, 662 A.2d 914, 916 (Me. 1995). To prevail, the plaintiff

---

[2] The complaint does not specifically request that this court vacate the Town Manager's approval of the Remleys' waiver request.

must show "not only that the board's findings are unsupported by record evidence, but also that the record compels contrary findings." *Total Quality v. Town of Scarborough*, 588 A.2d 283, 284 (Me. 1991).

Plaintiffs advance four principal arguments for vacating the decision of the Winthrop Board. First they assert that the ordinance itself is unconstitutional. Second, plaintiffs assert that the Board erred, as a matter of law, when it designated the right-of-way over plaintiffs' lot as a "private street." Third, plaintiffs assert that the Board decision made their lot into an undersized illegal lot. Finally, plaintiffs assert that the Board's "no environmental impact" finding is not supported by the record, is an abuse of discretion and an error of law.

Plaintiffs characterize the Board's renaming of the driveway on lots 23A-1 and 23A-2 as a "private street" a charade and a ruse. In order to accomplish this renaming the Board had to grant a variance from the street construction requirements contained in § VII of the amended Subdivision Ordinance & Road and Street Construction, Ordinance #21. The provision of this ordinance that plaintiff attacks as vague and an unconstitutional delegation of authority reads:

> Where the Town Council finds extraordinary and unnecessary hardships may result from the strict compliance with these standards or where there are special circumstances of a particular application, it may vary these standards upon recommendation of the Town Manager so that substantial justice may be done and the pubic interest served.

Subdivision Ordinance & Road and Street Construction, Ordinance #21 § VII(A).

Plaintiffs cite a 1993 Law Court ruling discussing legislative delegation and quotes that court as setting "impermissible legislative delegation of authority" as a standard for finding an ordinance unconstitutional. *Gorham v. Town of Cape Elizabeth*, 625 A.2d 898, 900 (Me. 1993).

Plaintiffs next cite a more recent Law Court decision that held a provision in a Shoreland Ordinance requiring that developments "conserve natural beauty" unconstitutionally vague and an impermissible delegation of the legislative authority and a violation of the due process clause. *Kosalka v. Town of Georgetown*, 2000 ME 106 ¶ 17, 752 A.2d 183, 187.

Finally plaintiffs cite a 1972 Law Court ruling striking down a zoning ordinance that permitted extension of a use if it "shall meet the approval of the Zoning Board of Appeals." *Stucki v. Plavin*, 291 A.2d 508, 509-510 (Me. 1972). The *Stucki* court described a "governing rule" in these matters:

> The governing rule, constitutionally mandated, may be simply stated as that in delegating power to an administrative agency, the legislative body must spell out its policies in sufficient detail to furnish a guide which will enable those to whom the law is to be applied to reasonably determine their rights thereunder, and so that the determination of those rights will not be left to the purely arbitrary discretion of the administrator.

*Id.* at 510.

Plaintiffs assert then that the Winthrop ordinance's language allowing variance upon a recommendation of the Town Manager to avoid "extraordinary and unnecessary hardships" and in "special circumstances of a particular application" is an unconstitutional delegation of legislative authority and an unconstitutionally vague standard.

Defendants reply that the ordinance is "chock-full of standards" providing details of road construction but that it also recognizes that one size does not fit all and therefore provides waivers as a means of flexibility.

Defendants rely heavily on a recent law court ruling vacating a Superior Court decision affirming the Ogunquit Planning Board's approval of a final subdivision plan. *York v. Town of Ogunquit*, 2001 ME 53, 769 A.2d 172. While it is true that the court

upheld the town's authority to grant waivers, *id.* at ¶ 10, there was no constitutional issue raised in that appeal and none was addressed by the court.

Even given the deference granted municipalities in drafting and interpreting their ordinances, it is impossible for this court to discern a standard in § VII(A) of Winthrop's ordinance. The Town relies upon the design standard as to right-of-way width, pavement width, roadway crown, etc. as the standards which are at issue from the plaintiffs' challenge. Unfortunately, those are not the standards that are to be sought for purposes of determination of improper legislative authority. The standards to be provided by the zoning ordinance and the subdivision ordinance are the criteria wherein the Board, and by implication the Town Manager, would find "extraordinary and unnecessary hardships" and "special circumstances of a particular application." Clearly, the language comes from *York v. Town of Ogunquit*, 769 A.2d at 177.

The requirement goes on to state that the town must find that the variations will not have the effect of nullifying the intent and purpose of the zoning ordinance or the comprehensive plan and that the local planning agency must find, that due to special circumstances of a particular plan, the required improvements are not requisite in the interest of public health, safety and general welfare or is inappropriate because of inadequacy or lack of connecting facilities adjacent or in proximity to the proposed subdivision. Further, the court approved the waiver provided it was subject to appropriate conditions which result in meeting the purposes and intent of the requirements.

The issue is not which construction standards or design standards are necessary for an acceptable road and street in the Town of Winthrop but under what circumstances a property owner may determine that he or she is entitled to the waiver.

The lack of a standard also puts the Board's decision-making authority well into the zone wherein unconstitutional legislative authority lies.

In their argument, defendants espouse that, "special circumstances" must be case specific and almost impossible to predict. They use the following example: "In one case the 'special circumstances' may be topography, in another - economics, in another - soil types, in another - the shape of the parcel being developed, in another pre-existing conditions in the vicinity of the proposed road." If that is the case, it was incumbent upon the legislative authority to define the characteristics of those special circumstances in order to provide a standard and to avoid an improper delegation of legislative authority with language too general to expect a member of the public to be able to comply.

Plaintiffs assert that in attempting to solve the problem of allowing a driveway to serve as access to three lots by designating that driveway a "private street" at the point it crosses lot 23A-1 and keeping the rest of the road (the portions on lots 23A-2 and 19A) a "driveway," it created a legal conundrum. Plaintiffs point out that the term "private street" is not contained in the ordinance and a "private road" is defined as "road serving three or more lots, which is not a municipal road." Subdivision ordinance, Art. XII. Since this road serves only plaintiffs lot it cannot, according to plaintiffs, be a "private road" and must remain a driveway.

Defendants reply to this definitional argument by conceding that neither the term "street" nor "road" are defined in the ordinance. Defendants review the definitions of "driveway" and "private road" and argue that nothing in the ordinance compels a conclusion that the Board cannot classify a road segment that serves only one house a street or road rather than a driveway. Defendants note that the law court has

stated that "weight" should be given to an administrative agency's interpretation of an ordinance. *Griffin v. Town of Dedham*, 2002 ME 105 ¶ 7, 799 A.2d 1239, 1242.

Plaintiffs, in their reply brief, note that further on the *Griffin* court stated that "[a]n agency's construction, however, is not conclusive or binding on us" and that interpretation should be done "by first looking at the plain meaning of the language to give effect to legislative intent." *Id.* This court notes that still further on, however, the law court stated "'the terms or expressions in an ordinance are to be construed reasonably with regard to both the objectives sought to be obtained and the general structure of the ordinance as a whole.'" *Id.* (quoting, 589 A.2d 1272, 1274 (Me. 1991)).

Neither the zoning ordinance nor the subdivision ordinance nor ordinance no. 21 as an amendment to the subdivision ordinance tell us what a "street" is nor, for that matter, the definition of a "road." While ordinance no. 21 does add the words "and streets" to subsection B(13) of Article VIII of the subdivision ordinance, it mandates that roads shall be planned and constructed in accordance with ordinance no. 21. Nothing in the ordinances under review show a desire or command from the legislative body that roads must contain more than a single home. While there is a limitation of two houses to a driveway, there is no similar mandate of two plus homes to a road. The defendants can call the right-of-way easement anything they want, but by definition in the prevailing municipal law in this town, a driveway must be a road serving no more than two lots and a private road must be a road serving three or more lots which is not a municipal road (whatever that is). Even the Town Manager, in his recommendation of June 30, 2003, refers to the "private minor road" which, by definition within the

ordinance, must serve three or more lots.[3] If a private road, by definition, serves three or more lots and the "road" or "street" is not a private road, what is it?

Plaintiffs are arguing that by reclassifying his driveway as a road the Board has reduced his lot size to below the minimum 80,000 square feet[4] required by the Winthrop Zoning Ordinance. *See*, Winthrop, Me., Zoning Ordinance § 3.6(E). Plaintiffs assert that by creating a nonconforming lot the Board has abused its discretion and committed an error of law. Defendants do not dispute plaintiffs' position or calculations regarding lot size.

It is undisputed that the zoning ordinance requires the plaintiffs' lot to contain a lot area of 80,000 square feet. The lot area is defined in the zoning ordinance as:

> The area of land enclosed within the boundary lines of the lot, minus land below the normal high water line of a water body or upland edge of a wetland and areas beneath roads serving more than two lots.

The decision of the Winthrop Planning Board is that the right-of-way going across plaintiffs' lot is a "private street" (undefined) and that the portion of the right-of-way transvering the defendants' lots transvering into defendants' lots is a "private driveway." If the defendants rely upon definitions within its own ordinance but feel free to utilize terms not defined in the ordinance, it is impossible to determine whether the plaintiffs' lot is conforming or nonconforming. If the "private road," as a matter of fact, serves plaintiffs and two defendants' lots, it must be subtracted from plaintiffs' lot area in order to determine conformance. If that is the case, it is agreed by the parties, the plaintiffs' lot becomes nonconforming by some 7,143 feet.

---

[3] Furthermore, the Town Manager says since the "private road" will serve only one home, no turnaround is necessary. This is in direct contradiction to the definition of private road under the subdivision ordinance by its very terms.

[4] Plaintiffs assert that the lot will equal 72,857 once the 421 foot by 50 foot easement is designated a road.

Plaintiffs maintain that the Board, in approving the amendment to the subdivision ordinance, failed to address § VIII(B)(4) of the ordinance requiring an applicant to submit a storm water management plan and a "TR-55 analysis."[5] Defendants have stated in ¶ 9 of the August 6, 2003 decision that "because no new construction or changes to the existing road are proposed, the Board finds . . . no environmental impact." Decision of Winthrop Planning Board, August 6, 2003, at page 2, ¶ 9.

Because this court is satisfied that the waiver granted by the Board upon the recommendation of the Town Manager is an improper delegation of legislative authority, it does not address the issue of storm water management plan.

The proposal by the defendants in compromise and the action by the Winthrop Planning Board can only be characterized as an honest and good faith attempt to resolve an unusual situation. However, when a municipality deviates from the requirements of its own ordinances or takes actions based upon considerations not within the ordinances, it is disregarding the rights of all of its citizens and particularly those immediately affected, to expect the community to rely upon appropriately established standards. Definitions are important because they put a community on notice as to the characteristic and legal consequences attendant to required provisions of municipal law. Unfortunately, in an attempt to resolve this situation, defendants have created an undefined precedent not consistent with the requirements of law.

---

[5] A TR-55 is a storm water flow modeling system commonly used by municipalities and other pollution control regulators.

> Technical Release 55 (TR-55) presents simplified procedures to calculate storm runoff volume, peak rate of discharge, hydrographs, and storage volumes required for floodwater reservoirs. These procedures are applicable in small watersheds, especially urbanizing watersheds, in the United States. Limits: NRCS type distributions, 24-hour duration rainfall, 10 subwatersheds, minimum 0.1 hour and maximum 10-hour time of concentration.

United States Dept. of Agriculture, NRCS *Technical Tools*, at http://www.nrcs.usda.gov/technical/techtools/

The entry will be:

The decision of the Winthrop Planning Board regarding requests of James and Deborah Remley to amend the plan of Vista Heights Subdivision dated August 6, 2003, is VACATED.

Dated: September ___24___, 2004

Donald H. Marden
Justice, Superior Court

Date Filed __9/5/03__ __Kennebec__ Docket No. __AP03-52__
County

Action __Petition for Review__ . (Strumfiel
80B
- Keith R. Varner, Esq.
227 Water Street
POB 1051
(Richard Calcagni) Augusta, Me. 0433J. MARDEN
John Bobrowiecki, Esq
PO Box 120 - James & Deborah Remley, Pro Se
Gardiner, ME 04345 20 Vista Heights
Winthrop, Maine 04364

David A. & Cathy J. Leonard vs. Town of Winthrop & Planning Bd. of Town

| Plaintiff's Attorney | Defendant's Attorney Winthrop |
|---|---|
| Jed Davis, Esq.<br>86 Winthrop Street<br>Augusta, Maine 04330 | Lee K. Bragg, Esq.<br>P.O. Box 5057<br>Augusta, Maine 04432-5057 |
| - Gregory J. Ferris, Esq.<br>Sean M. Farris, Esq.<br>251 Water Street<br>P.O. Box 120, Gardiner, Me. 04345 | - Christopher L. Vaniotis, Esq.<br>100 Middle Street<br>P.O. Box 9729<br>Portland, Maine 04104-5029 |

| Date of Entry | |
|---|---|
| 9/5/03 | Complaint, filed. s/Davis, Esq. |
| 9/8/03 | Notice of briefing schedule mailed to atty. |
| 10/3/03 | Plaintiffs' Motion for Extension of Time, filed. s/Davis, Esq.<br>Proposed Order, filed. |
| 10/7/03 | ORDER, Marden, J. (dated 10/6/03)<br>The deadline shall be extended until October 30, 2003, and the deadline f<br>filing briefs extended until 11/17/03.<br>Copy mailed to atty. |
| 10/17/03 | Acceptance of Service, filed. s/Bragg, Esq.<br><br>Entry of Appearance, filed. s/Vaniotis, Esq. |
| 10/30/03 | Plaintiffs' Motion for Extension of Time, filed. s/Feeney, Esq.<br>Proposed Order, filed. |
| 10/31/03 | ORDER, Marden, J.<br>Plaintiff's motion for extension of time for filing a Motion for Trial on<br>Facts is GRANTED. Time extended until November 7, 2003.<br>Copies mailed to attys of record. |
| 11/14/03 | Motion for Leave to Amend Complaint, filed. s/Davis, Esq.<br>Proposed Order, filed.<br>Amended Complaint, filed. s/Davis, Esq.<br>Plaintiffs' Motion for Enlargement of Time, filed. s/Davis, Esq.<br>Proposed Order, filed. |
| 11/20/03 | MOTION FOR ENLARGEMENT OF TIME, Marden, J. (dated 11/18/03)<br>Time to file briefs enlarged to December 1, 2003.<br>Copies mailed to attys of record.<br><br>MOTION FOR LEAVE TO AMEND COMPLAINT, Marden, J. (dated 11/28/03)<br>Plaintiff's mtoion for leave to amend complaint is granted.<br>Copies mailed to attys of record. |
| 12/1/03 | Plaintiffs' Motion for Enlargement of Time, filed. s/Davis, Esq.<br>Proposed Order, filed. |