2008 ME 53

**Elisha Edward CAMP et al.**

v.

**TOWN OF SHAPLEIGH et al.**

Supreme Judicial Court of Maine.

Submitted on Briefs: Nov. 27, 2007.
Decided: March 18, 2008.

Ronald D. Bourque, Esq., Jessica A. Demers, Esq., Bourque & Clegg, LLC, Sanford, ME, for the Town of Shapleigh, Richard Glidden and Rosemarie Glidden.

Bruce M. Read, Esq., Shepard & Read, Kennebunk, ME, for Elisha Edward Camp and Joyce P. Camp.

Panel: SAUFLEY, C.J., and CLIFFORD, ALEXANDER, LEVY, SILVER, and GORMAN, JJ.

GORMAN, J.

[¶ 1] Richard Glidden and Rosemarie Glidden appeal the judgment of the Superior Court (York County, *Fritzsche, J.*) vacating a decision by the Town of Shapleigh's Zoning Board of Appeals that granted the Gliddens a variance. The Gliddens argue that there was sufficient record evidence to support the Board's finding that the need for a variance was due to the unique circumstances of the property and not the general conditions of the neighborhood. We agree with the Superior Court and affirm its decision vacating the Board's decision.

## I. BACKGROUND

[¶ 2] On March 15, 1973, Richard and Rosemarie Glidden acquired a piece of property on Treasure Island in the Town of Shapleigh. The Gliddens never built a structure on the property, which is approximately 7500 square feet, and it remained undeveloped for the next three decades. During that time, setback requirements for buildings on the island were changed. In 2004, family friends told the Gliddens that they would be interested in purchasing the property if the Gliddens built a twenty-four-foot by thirty-four-foot structure on it.

[¶ 3] In 2006, the Gliddens applied for and were granted a growth permit for a septic system for the proposed structure. With the permit for the septic system in hand, they applied to the Town of Shapleigh for a building permit. The Town's code enforcement officer denied their ap-

plication for a building permit because the proposed structure would not comply with the setback requirements of the Town's zoning ordinance.

[¶ 4] The Gliddens appealed the decision of the code enforcement officer pursuant to section 105–71(C)(1) of the zoning ordinance. Shapleigh, Me., Zoning Ordinance § 105–71(C)(1) (Sept.2005). In their appeal to the Board, the Gliddens requested relief from the application of Section 105–18 of the ordinance to their property. Section 105–18 provides that all residential buildings in the Shoreland District must be set back fifty feet from a right-of-way or seventy-five feet from a road center, and set back at least one hundred feet from the shoreline. *Id.* § 105–18. In addition, each residential building must also have side setbacks of ten feet, and the combined width of both side yards must be at least thirty feet. *Id.* §§ 105–18, 105–19(E). The parcel owned by the Gliddens is in the Shoreland District, and the structure they proposed to build was to be ten feet from the right-of-way, ten feet from the right sideline, ten feet from the left sideline, and fifty-four feet from the water.

[¶ 5] Section 105–71(C)(2)(b) of Shapleigh's zoning ordinance permits the Zoning Board of Appeals to grant variances only when strict application of the ordinance to the applicant and his property would cause undue hardship, and states that "undue hardship" means:

■ That the land in question cannot yield a reasonable return unless a variance is granted;

■ That the need for a variance is due to the unique circumstances of the property and not the general conditions in the neighborhood;

■ That the granting of a variance will not alter the essential character of the locality; and

■ That the hardship is not the result of action taken by the applicant or a prior owner.[1]

*Id.* § 105–71(C)(2)(b). During the course of its hearing, the Board considered these factors in light of the information presented by the Gliddens and the other individuals who attended. At the conclusion of the hearing, the Board unanimously agreed that the land in question could not yield a reasonable return without the granting of a variance; that the granting of the variance would not alter the essential character of the locality; and that the hardship was not the result of any action taken by the Gliddens or a prior owner but was due to the size and location of the property. After discussing whether the need for a variance was due to the unique circumstances of the property and not the overall conditions of the neighborhood, however, the five-member Board was divided. Two of the members found that there were no unique circumstances. One of the members found that the small size of the lot demonstrated unique circumstances, another member said it was unique because it did not have a house on it while the adjoining lots both had houses, and a third said it was unique because of its size *and* its lack of a building.

[¶ 6] The Board approved four variances for the Gliddens, based upon its determination that the Gliddens had established that strict application of the Ordinance to their property would create undue hardship.

[¶ 7] The plaintiffs in this action, Elisha Edward Camp and Joyce P. Camp, are trustees of Camp Management Trust, which owns property on Treasure Island

---

1. This language precisely tracks the language   of 30–A M.R.S. § 4353(4) (2007).

that abuts the Gliddens' property. Pursuant to M.R. Civ. P. 80B, they appealed the Board's decision to the Superior Court, challenging the Board's findings concerning reasonable return and unique circumstances. After a hearing, the Superior Court vacated the Board's decision, based upon its determination that the Gliddens had failed to establish that they have a "unique circumstance of a too small lot rather than owning one of many substandard lots which are of a size consistent with the general conditions of the neighborhood."

## II. DISCUSSION

[¶ 8] In their appeal to us, the Gliddens assert that there was sufficient evidence for the Board to conclude that the need for a variance was due to the unique circumstances of their lot. The Gliddens argue that the unique circumstances are that the neighboring lots and the majority of lots on the island already contain single family residences, whereas their lot does not, and the deed restrictions on their lot prevent the use of the lot for anything other than a single family residence.

■ [¶ 9] When, as here, the Superior Court acts in its appellate capacity, we review directly the decision of the Zoning Board of Appeals for "abuse of discretion, errors of law, or findings not supported by the substantial evidence in the record." *McGhie v. Town of Cutler*, 2002 ME 62, ¶ 5, 793 A.2d 504, 505; *Yates v. Town of Southwest Harbor*, 2001 ME 2, ¶ 10, 763 A.2d 1168, 1171. "Substantial evidence exists when a reasonable mind would rely on that evidence as sufficient support for a conclusion...." *Forbes v. Town of Southwest Harbor*, 2001 ME 9, ¶ 6, 763 A.2d

1183, 1186. We do not make any findings other than those found explicitly or implicitly by the Board, and we do not substitute our judgment for that of the Board. *Perrin v. Town of Kittery*, 591 A.2d 861, 863 (Me.1991).

■ [¶ 10] The meaning of "unique circumstances" in Shapleigh's zoning ordinance presents a question of law that we review de novo. *See Marton v. Town of Ogunquit*, 2000 ME 166, ¶ 6, 759 A.2d 704, 706. The ordinance is interpreted by examining the plain meaning of the language. *Id.* The "terms or expressions in an ordinance are to be construed reasonably with regard to both the objectives sought to be obtained and the general structure of the ordinance as a whole." *Gerald v. Town of York*, 589 A.2d 1272, 1274 (Me.1991).

■ [¶ 11] In general, the unique circumstance requirement is met when the hardship suffered by the lot owner is not a hardship that is common with other lots in the neighborhood. *See Waltman v. Town of Yarmouth*, 592 A.2d 1079, 1080 (Me. 1991). In this case, two members of the Board held that the hardship suffered by the Gliddens was the property's small size. In *Sibley v. Town of Wells*, 462 A.2d 27 (Me.1983), we concluded that the mere fact that a lot is substandard was not a unique circumstance when the undeveloped lots in the neighborhood were also a substandard size. *Id.* at 30. The evidence presented to the Board demonstrated that the Gliddens' lot was approximately the same size as many of the lots on the island, and that at least some of the undeveloped lots on the island are a substandard size.[2] In the "neighborhood" of Treasure Island, the size of the Gliddens' lot may not be unique.

---

2. The president of the Treasure Island Association informed the Board that there were currently seventy-seven houses on the island. He also reported that there were at least half

a dozen vacant lots on the island, some that could be built on and some that could not, because they did not meet the code restrictions.

 

Had a majority of the Zoning Board found that the size of the lot was, in fact, unique on facts that did not include other similar substandard lots, we would have upheld the Board's decision on that basis, pursuant to the applicable standard of review.

[¶ 12] However, a majority of the Board did not make that finding. As was mentioned above, only two of the members of the Board found that the Gliddens had demonstrated unique circumstances based upon the substandard size of the lot. The third Board member who found that the Gliddens had established unique circumstances based his finding on the lack of a house, stating: "It's unique because it doesn't have a house, like Scott said and the others do. So it doesn't meet the general conditions of the neighborhood so the condition is met." The Gliddens' argument to us is premised on that finding. They cite *Greenberg v. DiBiase*, 637 A.2d 1177, 1179 (Me.1994) as support for their assertion that the lack of a house gives rise to a determination of unique circumstances, but their reliance on that decision is misplaced. In *Greenberg*, we upheld the municipal board's determination that the landowner had established that her lot could not yield a reasonable rate of return without a variance because the setback requirements would preclude her from building a residential structure on her parcel. *Id.* at 1179. We also upheld the municipal board's determination that the parcel's size created unique circumstances that supported the granting of the variance. *Id.* Although we noted that the lot was unbuilt, we did not, and could not, uphold a board's decision that the very lack of the item you wish to build creates the unique circumstance that allows you to do so, as the unbuilt status of the property is immaterial. *See Radin v. Crowley*, 516 A.2d 962, 964 (Me.1986).

[¶ 13] It is undisputed that this property does not have a building on it, and that the property can only be used for residential purposes; these facts were properly considered by the Board in determining, unanimously, that the property cannot yield a reasonable return unless a variance is granted. The lack of a house is not a unique characteristic, however, and granting a variance on that basis was an error of law.

The entry is:

Judgment affirmed.