STATE OF MAINE
CUMBERLAND, ss

SUPERIOR COURT
CIVIL ACTION
Docket No. AP-09-020
AP-09-201



PETER CASSAT, et al.,

Petitioners

v.

TOWN OF SCARBOROUGH,
et al.

Respondents

DECISION AND ORDER

Before the court is the petitioners' amended appeal of the decision of the Scarborough Zoning Board of Appeals (ZBA) is before the court. For the following reasons, the decision of the ZBA is affirmed.

BACKGROUND

The facts in this case were set forth in the court's order of February 4, 2010.

Eralda Adams is the daughter of Phyllis E. Scala, and is a beneficiary of the Phyllis E. Scala Living Trust. The Scala family owns properties in the Higgins Beach neighborhood of Scarborough, Maine. Among their properties are lot 32 on the Tax Map, which has a house on it and fronts both Virdap and Champion Street, and lot 51 on the Tax Map, located at 7 Virdap Street (lot 51[]). Lot 32 is not contiguous to lot 51. Lot 32 is located approximately 150 feet from lot 51. Lot 51 is the subject of this 80B appeal. The Scala family has owned lot 51 for approximately 60 years. Scarborough adopted its Shoreland Zoning Ordinance (SZO) in 1974. Adams hopes to build a modest retirement home on lot 51.

The Higgins beach neighborhood consists primarily of small single-family homes and summer cottages. The neighborhood is bordered by the Atlantic Ocean on the east and by tidal rivers and wetlands on the north and northwest. Lot 51 was created in 1923 as part of the "East Point" subdivision. The property has been in the Scala family since the 1950's. Lots 51, 50, 49, and 48 are all currently vacant and are bordered by wetlands. Plaintiff Summerwind Cottage own lots 50 and 52, both of which abut lot 51. Summerwind Cottage has a cottage on lot 52. The Cassats have a home located at 8 Virdap Street (Lot 43 on the Tax Map), which is directly across the street from Lot 51.

1

The Town of Scarborough's SZO does not permit construction within 75 feet of the normal high water line of a wetland, stream or marsh.[1] Scarborough SZO § 15(B)(1). In order to develop within the 75-foot zone, a party must obtain a variance in accordance with section 1[6](G)(2)[2] of the Scarborough Zoning Ordinance.

Section 1[6](G)(2) of the Scarborough SZO provides for "Variance Appeals." It states:

Variances may be permitted only under the following conditions:

[a. Variances may be granted only from dimensional requirements including but not limited to, lot width, structure height, percent of lot coverage, and setback requirements.]

. . .

c. The Board shall not grant a variance unless it finds that:
(1) The proposed structure or use would meet the provisions of Section 15 except for the specific provision which has created the non-conformity and from which relief is sought; and
(2) The strict application of the terms of this Ordinance would result in undue hardship.
The term "undue hardship" shall mean:
(i) That the land in question cannot yield a reasonable return unless a variance is granted;
(ii) That the need for a variance is due to the unique circumstances of the property and not to the general conditions of the neighborhood;
(iii) That the granting of a variance will not alter the essential character of the locality; and
(iv) That the hardship is not the result of action taken by the applicant or prior owner.[3]

[Scarborough SZO § 1[6](G)(1)-(2); (R. 20–21)].

Lot 51 borders the marshlands located to the north and northwest of the Higgins Beach neighborhood. Due to the dimensions of lot 51, a variance from the 75-foot setback requirement is needed in order to build a home

---

[1] Section 15(B)(1) of the Scarborough SZO provides the following:
All new principal and accessory structures shall be set back at least two hundred fifty (250) feet, horizontal distance, from the normal high water line in the Stream Protection 2 District and seventy-five (75) feet, horizontal distance, from the normal high water line of other water bodies, tributary streams, or the upland edge of a wetland in the other districts.
(Scarborough SZO § 15(B)(1); R. 19.)

[2] In its decision, the court cites to Section 15(G) of the Scarborough SZO. Under the Scarborough SZO, as amended in July 2009, section 16 governs variances. (See R. 20–21.) The amendment did not change the requirements for a variance.

[3] The definition of "undue hardship" under section 16(G)(2)(c) of the Scarborough SZO is identical to 30-A M.R.S. § 4353(4).

on the property. The 75-foot setback from the wetland area encompasses most of lot 51 and it covers the entire building envelope. Adams requested a 50-foot variance from the 75-foot setback requirement within the shoreland zone. Adams also requested a limited reduction of 10 feet from the front setback and 5 feet from the side setback under the Scarborough Zoning Ordinance.[4] In order for Adams to build on the property, the Town of Scarborough must approve the 75-foot setback variance and the limited reduction of the Scarborough front and side setback zoning requirements so that the property will have a sufficient building envelope. If the Scarborough ZBA approves these two variances, the Maine Department of Environmental Protection will then review Adams' proposed project to determine if it satisfies the requirements for Activities Adjacent to Protected Natural Resources and for Coastal Sand Dune Projects.

On April 21, 2009, the Scarborough Code Enforcement Officer denied Adams' variance appeal for a 50-foot variance from the 75-foot setback requirement, noting that it would allow Adams to build a structure 25 feet from the edge of the marshlands. The Scarborough ZBA heard Adams' shoreland zoning variance application on May 13, 2009. The ZBA considered the four-pronged undue hardship criteria and voted 4-1 in favor of granting the variance application. During the May 13th hearing, the ZBA tabled Adams' request for a limited reduction of 10 feet from the front setback and 5 feet from the side setback, pending further inquiry about the design of the house proposed for lot 51.

Summerwind Cottage v. Town of Scarborough, 2010 Me. Super. LEXIS 25, *1-6 (Feb. 4, 2010) (Crowley, J.). Additional facts were set forth in the court's order of March 18, 2011:

Summerwind Cottage and the Cassats filed an 80B appeal challenging the ZBA's decision. The court remanded the case back to the Town for further findings of fact and conclusions on February 4, 2010. [Cottage, 2010 Me. Super. LEXIS 25, at *11.] The ZBA issued written findings on April 14, 2010. [(R. 30–32.)]

Cassat v. Town of Scarborough, 2011 Me. Super. LEXIS 36, *5–6 (Mar. 18, 2011) (Mills, J.). The court remanded the case again to the ZBA for further findings regarding compliance with section 15 of the SZO. Id. at *28. The ZBA held a public hearing on September 14, 2011, to consider the section 15 criteria for the variance application. (R.

---

[4] Under the Scarborough Zoning Ordinance, the front of the house must be 30 feet from the property boundary and the side set back is 15 feet.

33.) The ZBA voted unanimously to approve the Adams variance application. The ZBA issued written findings on October 21, 2011. (R. 33-37.)

For a third time, the petitioners appeal the ZBA's decision. They argue that the ZBA did not have the authority to grant the variance because the lot at issue is in the Resource Protection District, where no new residential development is permitted. They argue further that, even if the lot is in the Shoreland Overlay District, the variance was improperly granted because the lot does not meet the applicable requirements for a variance. (Pet. Br. 5.)

DISCUSSION

1. Standard of Review

When reviewing governmental action under M.R. Civ. P. 80B, the Superior Court reviews the operative decision of the municipality for "abuse of discretion, errors of law, or findings not supported by the substantial evidence in the record." Camp v. Town of Shapleigh, 2008 ME 53, ¶ 9, 943 A.2d 595 (quoting McGhie v. Town of Cutler, 2002 ME 62, ¶ 5, 793 A.2d 504). The ZBA's "characterizations and fact-findings about whether [a lot] meets Ordinance standards are entitled to 'substantial deference.'" Bizier v. Town of Turner, 2011 ME 116, ¶ 11 n.5, 32 A.3d 1048. The ZBA's interpretation of the SZO's requirements is reviewed de novo. Id. at ¶ 14. An ordinance is examined for its plain meaning and construed based on the purposes and objectives of the ordinance. If an ordinance is clear, the plain meaning controls. Id. If a term in an ordinance is defined, the term will not be redefined. Rudolph v. Golick, 2010 ME 106, ¶ 9, 8 A.3d 684. Overall, the court does "not make any findings other than those found explicitly or implicitly by the Board" and does "not substitute [its] judgment for that of the Board." Camp, 2008 ME 53, ¶ 9, 943 A.2d 595.

4

2. Resource Protection District

The petitioners argue that lot 51 should be in the Resource Protection District established by the SZO, and thus prohibited from receiving a variance for residential construction. (Br. of Pet. 3, 5–8.) The Town of Scarborough disputes this argument in three ways: (1) the petitioners waived the argument by not raising the issue as part of the original proceedings; (2) the court cannot review whether the property is properly zoned because establishing zoning boundaries is a legislative act; and (3) the boundaries on the zoning maps are entitled to deference and are consistent with ordinances.[5] (Br. of Scarborough 3, 4, 6.)

   a. Waiver of Argument

In its March 18, 2011, order this court noted that the petitioners had waived the argument that the ZBA did not have the authority to grant the variance because petitioners had failed to raise the argument at the May 13th hearing. Cassat, 2011 Me. Super. LEXIS 36, at *7–8 n.5. The petitioners attempted to correct this waiver by addressing the issue during the hearing on September 14, 2011. (R. 33.) The ZBA discussed this argument and made findings "despite the possibility that this question is not a proper topic for the Board to address in light of the fact that it is unrelated to the Section 15 criteria and was not an issue on remand from the Superior Court." (Id.)

Claims not raised before the ZBA are not preserved for consideration by the court. Tarason v. Town of S. Berwick, 2005 ME 30, ¶ 8, 868 A.2d 230. Here, the issue was raised before the ZBA. (R. 33.) The more significant question is whether it was proper to address on remand. The court's prior decision and order found, "[t]here is no competent evidence to support granting the variance because the Town did not

---

[5] Based on the court's conclusion that it cannot review legislative actions as part of an 80B appeal, this third argument is not addressed.

5

consider whether the proposed structure complied with the requirements of section 15 of the SZO. This case is remanded to the ZBA for further proceedings consistent with this decision and order." Cassat, 2011 Me. Super. LEXIS 36, at *28. Although the order did not invite the ZBA's review of the Resource Protection argument, the ZBA considered the issue. The court assumes, for the purpose of argument on this appeal, that the issue is preserved.

b. Court Review of Legislative Action

The Town of Scarborough argues that the court cannot review whether the property was properly zoned because that is a legislative act. (Br. of Scarborough 4.) The petitioners claim that correcting a clear error in the zoning map is not improper. (Reply to Scarborough 2.) Zoning[6] is a legislative, not administrative, action. Benjamin v. Houle, 431 A.2d 48, 49 (Me. 1981); see also Veerman v. Town of China, 1994 Me. Super. LEXIS 145, *4 (Apr. 13, 1994) ("Allowing zoning administrators to amend boundary lines based on their individual view as to which side of the line an applicant's lot should be on would open the door to considerable mischief in municipal zoning practice, an area already affected with considerable factfinding discretion and unpredictability."). "Rule 80B does not create judicial authority to review governmental action or inaction." F.S. Plummer Co., Inc. v. Town of Cape Elizabeth, 612 A.2d 856, 859 (Me. 1992).[7] On this 80B appeal, the court may review administrative

---

[6] The Law Court utilized the now repealed 30 M.R.S.A. § 4962(1)(H) definition of zoning: "the division of a municipality into districts and the prescription and reasonable application of different regulations in each district." Benjamin v. Houle, 431 A.2d 48, 48 (Me. 1981) (quoting 30 M.R.S.A. § 4962(1)(H) (repealed in 1987)).

[7] The petitioners argue also that the zoning map contains a clear error and is inconsistent with the purpose of the zoning ordinance. This argument is not subject to review in an 80B appeal, but may be brought as part of a declaratory judgment. See F.S. Plummer Co., 612 A.2d at 859 (Me. 1992) (noting that zoning may be reviewed by the court in a declaratory judgment action); LaBonta v. City of Waterville, 528 A.2d 1262, 1263 (Me. 1987) (80B appeal converted to a declaratory judgment action in order to review a zoning amendment).

6

actions and, therefore, will not consider whether the zoning boundaries are appropriate. Because lot 51 is zoned outside of the Resource Protection District, the lot is not subject to the additional restrictions associated with that district.

3. Section 15

a. 2008 Ordinance and 2010 Amendments

Whether lot 51 complied with section 15 of the SZO is a question of ordinance interpretation. The ZBA considered each part of section 15 and found that lot 51, as a non-conforming lot, complied with the section 15 requirements. (R. 34–37.) The ordinance was amended in 2010. The ZBA stated that "[t]he findings are done according to the 2008 Ordinance and any relevant changes between 2008 and 2010 are addressed throughout." (R. 33.) The ZBA found that "any changes between the 2008 and the 2010 ordinances do not impact the Board's findings on this issue." (R. 34.) The petitioners assert that the variance application is controlled by the 2008 version of the SZO. (Reply to Scarborough 3.)

When an ordinance is amended, 1 M.R.S. § 302 explains which version of the ordinance controls:

> Actions and proceedings pending at the time of the passage, amendment or repeal of an Act or ordinance are not affected thereby. For the purposes of this section, a proceeding shall include but not be limited to petitions or applications for licenses or permits required by law at the time of their filing. For the purposes of this section and regardless of any other action taken by the reviewing authority, an application for a license or permit required by law at the time of its filing shall be considered to be a pending proceeding when the reviewing authority has conducted at least one substantive review of the application and not before. For the purposes of this section, a substantive review of an application for a license or permit required by law at the time of the application shall consist of a review of that application to determine whether it complies with the review criteria and other applicable requirements of law.

1 M.R.S. § 302 (2011).

7

Although "[e]ach . . . application is a separate 'proceeding' for the purpose of applying the grandfathering provision of section 302," Larrivee v. Timmons, 549 A.2d 744, 746 (Me. 1988), here the ZBA considered, on three occasions, the same application.[8] The Law Court has held that "an application is pending for the purposes of section 302 'when a municipality takes the threshold step of acting on the substance of a proposal.'" Walsh v. Town of Orono, 585 A.2d 829, 831 (Me. 1991) (quoting Littlefield v. Inhabitants of Town of Lyman, 447 A.2d 1231, 1235 (Me. 1982)). Although the ZBA reexamined the application on each remand, the application had been pending since 2009 and the 2008 ordinance controls this evaluation.

   b. Relevant Provisions from the 2008 Ordinance

   Three provisions from the SZO are relevant to this appeal.

First, section 12(E)(1) – Non-conforming Lots:

> A non-conforming lot of record as of the effective date of this Ordinance or amendment thereto may be built upon, without the need for a variance, provided that such lot is in separate ownership and not contiguous with any other lot in the same ownership, and that all provisions of this Ordinance except lot size and frontage can be met. Variances relating to setback or other requirements not involving lot size or frontage shall be obtained by action of the Board of Appeals.

Scarborough SZO § 12(E)(1); (R. 14).

Second, section 15 – Land Use Standards

> . . .
>
> A. Minimum Lot Standards
> . . .
>
> 2. The minimum shore frontage for all lots in the Shoreland Zone shall be 100 feet, measured in a straight line between the points of intersection of the side lot lines with the shore line at the normal high water line. The minimum width of any portion of any lot within 100 feet, horizontal

---

[8] Although the ZBA required "new materials" to address the court's concerns on remand, (Ex. A attached to Scala/Adams Br.), the ZBA considered the same request, a variance for lot 51 to permit construction of a structure on the lot.

distance of the normal high water line of a water body or upland edge of a wetland shall be equal to or greater than 100 feet.

Scarborough SZO § 15(A); (R. 18).

Third, section 17 – Definitions

Non-conforming lot:

A single lot of record which, at the effective date of adoption or amendment of this Ordinance, does not meet the area, frontage, or width requirements of the district in which it is located.

Scarborough SZO § 17; (R. 22).

The petitioners argue that the lot does not comply with the lot width requirement set forth in section 15(A)(2) and thus an additional variance is required.[9] (Pet. Br. 8-9.) The Scala/Adams respondents admit that the lot does not meet the requirements presented in section 15, but claim that the lot is exempt from this requirement because it is a "non-conforming lot." (Br. of Scala/Adams 8.) Non-conforming lots are parcels that did not meet the "area, frontage, or width requirements of the district in which it is located" at the time the ordinance was adopted. Scarborough SZO § 17; (R. 22). These non-conforming lots do not require certain variances because of section 12(E)(1) of the SZO, which provides that non-conforming lots can be developed without a variance as long as "all provisions of this Ordinance except lot size and frontage can be met." Scarborough SZO § 12(E)(1); (R. 14).

The petitioners argue that lot width is not included in the grandfathered in aspect of non-conforming lots. (Br. of Pet. 9.) The Scala/Adams respondents assert that "lot size and frontage" includes "lot width." (Br. of Scala 8–9.) The court must consider

---

[9] The petitioners also argue that the SZO only allows one variance for each parcel. (Br. Of Pet. 10.) The petitioners rely on language in the Ordinance: "The Board shall not grant a variance unless it finds that: (1) the proposed structure or use would meet the provisions of Section 15 except for the specific provision which has created the non-conformity and from which relief is sought." Scarborough SZO § 16(G)(2)(c); (R. 20.) This argument is not addressed because one variance, the setback variance, is requested in this case.

9

the plain meaning of the ordinance. Bizier, 2011 ME 116, ¶ 14, 32 A.3d 1048. Under the definition of non-conforming lots, the ordinance uses the terms "area," "frontage," and "width." Scarborough SZO § 17; (R. 22). The term "lot size" in section 12(E)(1) encompasses both "area" and "width" when considered in conjunction with section 17.[10] As a result, the plain meaning of the ordinance includes lot width in the grandfathered in aspect of non-conforming lots. A separate variance is not required.

Conclusion

The ZBA has the authority to grant a variance for the lot 51. Further, the ZBA's interpretation of the SZO rest on the plain meaning of the ordinance. Based on the 2008 ordinance, the parcel is a non-conforming lot and the only variance necessary is one with regard to the setback. A previous court decision in this case upheld the setback variance pending the ZBA's determination that the section 15 requirements are met. The ZBA found in 2011 that Lot 51 complies with the section 15 requirements.

The entry is

The Decision of the Town of Scarborough Zoning Board of Appeals is AFFIRMED.

Dated: June 29, 2012

Nancy Mills
Justice, Superior Court

---

[10] In common usage "size" is defined as "physical proportions, dimensions, magnitude, or extent." Webster's II New College Dictionary 1033 (1987).

10

STATE OF MAINE                              SUPERIOR COURT
CUMBERLAND, ss                              CIVIL ACTION
                                            DOCKET NO. AP-09-020/021
                                            *NM - CUM - 3/18 201*

PETER CASSAT, LIBBY
CASSAT, and SUMMERWIND
COTTAGE, LLC,

            Petitioners

      v.                                    DECISION AND ORDER

TOWN OF SCARBOROUGH,
PHYLLIS E. SCALA, TRUSTEE,
and ERALDA ADAMS a/k/a
RALDA ADAMS,

            Respondents

      Before the court are the consolidated claims of Summerwind Cottage, LLC and

Peter and Libby Cassats. Pursuant to M.R. Civ. P. 80B, Summerwind Cottage and the

Cassats appeal the decision of the Town of Scarborough Zoning Board of Appeals, in

which the ZBA granted a variance to Eralda Adams, and request that the court vacate

the ZBA's decision. The ZBA's findings that strict application of the terms of the Town's

Shoreland Zoning Ordinance would result in undue hardship are not clearly erroneous.

The ZBA failed to make findings as to whether the proposed structure or use would

comply with the land use standards set forth in section 15 of the Town's Shoreland

Zoning Ordinance. The case is remanded to the ZBA.

BACKGROUND

      The facts of this case were previously set forth in the court's order on February 4,

2010:

            Eralda Adams is the daughter of Phyllis E. Scala, and is a beneficiary of
      the Phyllis E. Scala Living Trust. The Scala family owns properties in the
      Higgins Beach neighborhood of Scarborough, Maine. Among their
      properties are lot 32 on the Tax Map, which has a house on it and fronts
      both Virdap and Champion Street, and lot 51 on the Tax Map, located at 7

1

Virdap Street (lot 51[]). Lot 32 is not contiguous to lot 51. Lot 32 is located approximately 150 feet from lot 51. Lot 51 is the subject of this 80B appeal. The Scala family has owned lot 51 for approximately 60 years. Scarborough adopted its Shoreland Zoning Ordinance (SZO) in 1974. Adams hopes to build a modest retirement home on lot 51.

The Higgins beach neighborhood consists primarily of small single-family homes and summer cottages. The neighborhood is bordered by the Atlantic Ocean on the east and by tidal rivers and wetlands on the north and northwest. Lot 51 was created in 1923 as part of the "East Point" subdivision. (R. at 10). The property has been in the Scala family since the 1950's. (R. at 11). Lots 51, 50, 49, and 48 are all currently vacant and are bordered by wetlands. Plaintiff Summerwind Cottage own lots 50 and 52, both of which abut lot 51. Summerwind Cottage has a cottage on lot 52. The Cassats have a home located at 8 Virdap Street (Lot 43 on the Tax Map), which is directly across the street from lot 51.

The Town of Scarborough's SZO does not permit construction within 75 feet of the normal high water line of a wetland, stream or marsh.[1] Scarborough SZO § 15(B)(1). In order to develop within the 75-foot zone, a party must obtain a variance in accordance with section 1[6](G)(2)[2] of the Scarborough Zoning Ordinance.

Section 1[6](G)(2) of the Scarborough SZO provides for "Variance Appeals." It states:

. . .

    c.  The Board shall not grant a variance unless it finds that:
        (1) The proposed structure or use would meet the provisions of Section 15 except for the specific provision which has created the non-conformity and from which relief is sought; and
        (2) The strict application of the terms of this Ordinance would result in undue hardship.
      The term "undue hardship" shall mean:
        (i)  That the land in question cannot yield a reasonable return unless a variance is granted;

---

[1] Section 15(B)(1) of the Scarborough SZO provides the following:
> All new principal and accessory structures shall be set back at least two hundred fifty (250) feet, horizontal distance, from the normal high water line in the Stream Protection 2 District and seventy-five (75) feet, horizontal distance, from the normal high water line of other water bodies, tributary streams, or the upland edge of a wetland in the other districts.

(Scarborough SZO § 15(B)(1); R. at 144.)

[2] In its decision, the court cites to Section 15(G) of the Scarborough SZO. However, under the Scarborough SZO, as amended in July 2009, section 16 governs variances. (See R. at 158.) The amendment did not change the requirements for a variance.

2

<blockquote>

    (ii)   That the need for a variance is due to the unique circumstances of the property and not to the general conditions of the neighborhood;

    (iii)  That the granting of a variance will not alter the essential character of the locality; and

    (iv)  That the hardship is not the result of action taken by the applicant or prior owner.[3]

</blockquote>

[(Scarborough SZO § 1[6](G)(1)-(2); R. at 158-59.)].

Lot 51 borders the marshlands located to the north and northwest of the Higgins Beach neighborhood. Due to the dimensions of lot 51, a variance from the 75-foot setback requirement is needed in order to build a home on the property. The 75-foot setback from the wetland area encompasses most of lot 51 and it covers the entire building envelope. Adams requested a 50-foot variance from the 75-foot setback requirement within the shoreland zone. Adams also requested a limited reduction of 10 feet from the front setback and 5 feet from the side setback under the Scarborough Zoning Ordinance.[4] In order for Adams to build on the property, the Town of Scarborough must approve the 75-foot setback variance and the limited reduction of the Scarborough front and side setback zoning requirements so that the property will have a sufficient building envelope. If the Scarborough ZBA approves these two variances, the Maine Department of Environmental Protection will then review Adams' proposed project to determine if it satisfies the requirements for Activities Adjacent to Protected Natural Resources and for Coastal Sand Dune Projects.

On April 21, 2009, the Scarborough Code Enforcement Officer denied Adams' variance appeal for a 50-foot variance from the 75-foot setback requirement, noting that it would allow Adams to build a structure 25 feet from the edge of the marshlands. The Scarborough ZBA heard Adams' shoreland zoning variance application on May 13, 2009. The ZBA considered the four-pronged undue hardship criteria and voted 4-1 in favor of granting the variance application. During the May 13th hearing, the ZBA tabled Adams' request for a limited reduction of 10 feet from the front setback and 5 feet from the side setback, pending further inquiry about the design of the house proposed for lot 51.

Cottage v. Town of Scarborough, 2010 Me. Super. LEXIS 25, *1-6 (Me. Super. Feb. 4, 2010) (Crowley, J.). Summerwind Cottage and the Cassats filed an 80B appeal challenging the ZBA's decision. The court remanded the case back to the Town for

---

[3] The definition of "undue hardship" under section 16(G)(2)(c) of the Scarborough SZO is identical to 30-A M.R.S. § 4353(4).

[4] Under the Scarborough SZO, the front of the house must be 30 feet from the property boundary and the side set back is 15 feet.

findings of fact and conclusions on February 4, 2010. Id. at *11. The ZBA issued written findings on April 14, 2010. (R. at 171-73.)

Summerwind Cottage and the Cassats jointly filed this amended 80B appeal challenging the ZBA's decision to grant the variance from the 75-foot setback requirement. In their amended appeal, the petitioners claim that (1) the ZBA did not have the authority to grant the variance;[5] (2) the ZBA failed to consider all of the requirements needed for a hardship variance under the SZO; (3) the ZBA committed errors of law and failed to support its decision when it concluded that lot 51 cannot yield a reasonable return and its findings are not supported by the record; and (4) the applicants failed to prove that the need for a variance was due to the unique conditions of their property.[6]

DISCUSSION

1.    Standard of Review

In an action brought pursuant to M.R. Civ. P. 80B, the court reviews the operative decision of the municipality directly "for abuse of discretion, errors of law, or

---

[5] The petitioners waived this claim when they failed to raise it during the May 13th hearing before the ZBA. The well-established preference is that "issues related to municipal permits, approvals or variances be first addressed by the municipal board of appeals." Wister v. Town of Mount Desert, 2009 ME 66, ¶ 22, 974 A.2d 903, 910. The petitioners cite Brackett v. Town of Rangeley, 2003 ME 109, ¶27, 831 A.2d 422, 430 (Alexander, J., concurring), Nestle Waters N. America, Inc v. Town of Fryeberg, 2009 ME 30, ¶ 31, 967 A.2d 702, 711-12, and Johnson v. City of Augusta, 2008 Me. Super. LEXIS 156 (Me. Super. Apr. 16, 2008) for the proposition that the court may properly address this new claim on appeal. These cases are not on point. In Brackett, the town's code enforcement officer completely failed to comply with the permit process, which denied the Bracketts an opportunity to contest construction that violated the town's ordinances. Brackett, 2003 ME 109, ¶¶ 3-5, 967 A.2d at 424-25. In Nestle, the Law Court found the Superior Court erred in remanding the case back to the board and therefore the board's decision after remand was null and void. Nestle, 2009 ME 30, ¶ 31, 967 A.2d at 711–12. Johnson does not apply because the petitioners do not claim that the ordinance under which the ZBA acted was unconstitutional. Johnson, 2008 Me. Super. LEXIS 156 at *7-8 (citing Sold, Inc. v. Town of Gorham, 2005 ME 24, ¶ 12, 868 A.2d 172, 176); see also Fisher v. Dame, 433 A.2d 366, 374 (Me. 1981).

[6] The Town responded to the first two claims raised by the Petitioners. Respondents Scala and Adams responded to claims 3 and 4. Each joined and adopted the other's brief.

4

findings not supported by the substantial evidence in the record." Wyman v. Town of Phippsburg, 2009 ME 77, ¶ 8, 976 A.2d 985, 987 (quoting Griswold v. Town of Denmark, 2007 ME 93, ¶ 9, 927 A.2d 410, 414).

"Substantial evidence is evidence that a reasonable mind would accept as sufficient to support a conclusion." Toomey v. Town of Frye Island, 2008 ME 44, ¶ 12, 943 A.2d 563, 566 (quoting Sproul v. Town of Boothbay Harbor, 2000 ME 30, ¶ 8, 746 A.2d 368, 372). "That inconsistent conclusions can be drawn from evidence does not mean that a finding is not supported by substantial evidence." Id.

"[T]he burden is on the variance applicant before the Board to prove by competent evidence that all of the statutory requirements for the granting of a variance have been met." Perrin v. Town of Kittery, 591 A.2d 861, 863 (Me. 1991). The court does "not make any findings other than those found explicitly or implicitly by the Board" and does "not substitute [its] judgment for that of the Board." Camp v. Town of Shapleigh, 2008 ME 53, ¶ 9, 943 A.2d 595, 598. Further, "[a] demonstration that no competent evidence supports the local board's findings is required in order to vacate the board's decision." Thacker v. Konover Dev. Corp., 2003 ME 30, ¶ 8, 818 A.2d 1013, 1017.

2.    Reasonable Return

The petitioners claim that the ZBA erred in concluding that lot 51 cannot yield a reasonable return without granting a variance from the 75-foot setback requirement. "'The reasonable return prong of the undue hardship test is met where strict application of the zoning ordinance would result in the practical loss of all beneficial use of the land.'" Toomey, 2008 ME 44, ¶ 15, 943 A.2d at 567 (quoting Perrin, 591 A.2d at 863). The Law Court has repeatedly stated that reasonable return is not the maximum return that could be afforded by the property. Id. (citing Ledbetter v. Ferris, 485 A.2d 225, 227

5

(Me. 1984)). "Economic proof that no reasonable return is possible is not required."

Wister, 2009 ME 66, ¶ 30, 974 A.2d at 912 (quoting Toomey, 2008 ME 44, ¶ 15, 943 A.2d at 567).

Here, the ZBA found:

**A) The land in question cannot yield a reasonable return**

Findings of Fact:
1. The property is located in close proximity to permanent residences, and any available recreational uses, such as pitching a tent or parking a recreational vehicle, would be incompatible with the neighborhood. In addition, the Town's ordinances do not allow such uses for an extended period of time.
2. There is no dock on the property, and the property is not suitable for providing access to the water for boating.
3. A neighbor testified that the property could be sold to and combined with the lot of an abutter rather than built upon. The Board finds that such a sale is essentially forced and would not be at fair market value. The transaction would limit the value of the property to only one person. There is no such purchase and sale offer or contract that was presented to the Board of available at the time of the Board's decision.
4. The only uses available to the property without a variance are non-productive uses, both financially and practically.
5. There was no setback when this site was purchased and the appellants maintained the property in such a way so as to demonstrate that they always intended to build on it.
6. The intent of the owners when they purchased the property through to the present time was and is to build on it.
7. This lot has always been regarded as a building lot, including being taxed as a building lot by the Town Assessor at the time of the purchase, and anyone else who would buy this lot would also have the intention to build on it because of its location in this neighborhood.

Conclusions
1. If the variance is not granted, the property is unsuitable for any of the permitted uses in the zone.
2. If a house could not be put on the property it is lack of reasonable return.
3. Based on the area of town being located on the ocean in the Higgins beach neighborhood surrounded by similar lots and houses, we see no reasonable return in the property with no house on it.

(R. at 171.)[7]

a. Recreational Uses

The petitioners rely on Toomey to suggest that lot 51 provides a reasonable return to Ms. Adams without obtaining the requested variance. In Toomey, the petitioner owned an inland property and a shorefront property in Frye Island. 2008 ME 44, ¶ 2, 943 A.2d at 564. The local board denied Toomey's request for a variance to construct a home on his shorefront property and found that because the property provided a recreational benefit, the property provided a significant beneficial use without the need for a variance. Id. ¶ 6, 943 A.2d at 565. In upholding the board's denial, the Law Court held:

> There is competent evidence in the record that supports the Board's decision that Toomey enjoys a benefit from the shorefront property. Here, while there is no suggestion that Toomey could use the property commercially, he has used, and may continue to use, the property for recreational purposes. A waterfront lot is a significant benefit to a property owner who owns an inland lot.[8]

---

[7] The petitioners contend that the ZBA committed an error of law when it relied on factors unrelated to whether lot 51 could provide a reasonable return. (Pet'rs' Br. at 15.) The petitioners claim that whether the lot is buildable is not indicative of whether it can yield a reasonable return. See Toomey, 2008 ME 44, ¶ 16, 943 A.2d at 567; Twigg v. Town of Kennebunk, 662 A.2d 914, 918-19 (Me. 1995). The petitioners also assert that the fact that Ms. Adams owned lot 51 for a long time is relevant only to whether there is a self-created hardship. See Twigg, 662 A.2d at 918 ("[A]ctual or constructive knowledge of the zoning ordinances prior to purchase of the property may be considered by the Board as a factor in evaluating a self-created hardship . . . ."). Additionally, the petitioners allege that Ms. Adams's intent to build on lot 51 or the actual use of lot 51 is irrelevant. Because the ZBA relied on these irrelevant factors, the petitioners claim that the ZBA committed errors in law. It is not clear from the record that the ZBA relied exclusively on these factors in reaching its decision. In fact, the record indicates that the ZBA thoroughly discussed the potential recreational uses for lot 51 and whether Ms. Adams could sell the land. (See e.g., R. at 34-35, 39-40, 45, 47-48.)

[8] Ms. Adams owns other lots in the Higgins Beach area, none of which are contiguous to lot 51. Compare Perrin, 591 A.2d at 863-64 (finding that the applicants did not establish that there would be no reasonable return without a variance when they owned a contiguous lot on which they had already built a home). Unlike in Perrin, Ms. Adams does not own a residence on a contiguous lot.

7

Id. ¶ 18, 943 A.2d at 567–68. The petitioners cite Toomey to argue that property used for recreation alone can provide a reasonable return and to suggest that lot 51's access to water is similar to Toomey's.

This case is distinguishable from the facts of Toomey. First, in Toomey the Law Court upheld a zoning board's decision to deny the variance request. Id. ¶ 6, 943 A.2d at 565. Here, the petitioners attempt to overturn the ZBA grant of Ms. Adams's variance request and have the burden of showing that the ZBA erred. Second, the reasonable return Toomey obtained from recreation at his shorefront property is distinguishable. Toomey was able to maintain an existing dock on the property for recreational boating. Id. ¶ 16, 943 A.2d at 567. Here, there is no evidence that the owner used the lot for recreational purposes. Furthermore, the ZBA considered the potential recreational benefits of lot 51 and concluded that they did not create a reasonable return on the property.[9] The ZBA's finding is not clearly erroneous and is supported by substantial evidence on the record.[10] See also Wister, 2009 ME 66, ¶ 31,

---

[9] This case is also distinguishable from the other cases cited by the petitioners to support their argument that recreational use provides a reasonable return. (See Pet'rs' Br. at 17.) The Petitioners cite to Twigg, Wyer v. Board of Envtl. Prot., 2000 ME 45, 747 A.2d 192, and Kunzel v. Inhabitants of Swans Island, 1985 Me. Super. LEXIS 129 (Me. Super. May 17, 1985). Wyer involved a claim that the denial of the variance was an unconstitutional taking. 2000 ME 45, ¶ 1, 747 A.2d at 193. The standard for a taking is whether the denial deprives the property of all practical value, not all practical use as in a reasonable return analysis. See id. These cases involve an appeal from the denial of a variance. Twigg, 662 A.2d at 915; Wyer, 2000 ME 45, ¶ 1, 747 A.2d at 193; Kunzel, 1985 Me. Super. LEXIS 129 at *1. The variance applicants were already using their properties for recreational purposes. Twigg, 662 A.2d at 919 (finding that the record established that the petitioner could continue to use the property for recreational purposes); Kunzel, 1985 Me. Super. LEXIS 129 at *1 (finding that there was "no 'undue hardship' because the land was yielding a reasonable return as a mooring place for plaintiff's boat . . .").

[10] Ms. Adams relies primarily on Marchi v. Town of Scarborough, 511 A.2d 1071 (Me. 1986) and Greenberg v. DiBiase, 637 A.2d 1177 (Me. 1994). In both of these cases, "the zone in question was strictly confined to residential use." Time Enough, Inc. v. Inhabitants of the Town of Standish, 1994 Me. Super. LEXIS 265, *3 (Me. Super. Jul. 13, 1994) (Broderick, J.) (internal quotations omitted). In this case, though the ordinance does not strictly limit the zone to residential uses, the ZBA found that "any available recreational uses, such as pitching a tent or parking a recreational vehicle, would be incompatible with the neighborhood. In addition, the Town's ordinances do not allow such uses for an extended period of time." (R. at 171.)

8

974 A.2d at 912 (holding that though there may be some value to the property without a variance, the board's decision that the applicant "will suffer the practical loss of all beneficial use ... is not clearly erroneous"); Camp, 2008 ME 53, ¶ 13, 943 A.2d at 599 (noting that a board may consider the fact that a property may only be used for residential purposes and the property is not currently developed to find that there is no reasonable return without a variance).

b. Potential Sale

Aside from the argument that this property could be used for recreational purposes, the petitioners also claim the property could be sold.[11] "The fact that the property has a potential for sale to an abutting owner does not in and of itself derogate from the applicants' clear showing that this parcel is not susceptible to a beneficial use." Marchi, 511 A.2d at 1073. While the ZBA acknowledged that Ms. Scala stated she had had offers on the property in the past (R. at 39, 45), the ZBA considered this fact in light of the relevant zoning ordinances. Ultimately, the ZBA concluded that lot 51 would not yield a reasonable return if it were sold unless a person were granted a variance in order to build on it. (R. at 48, 171.) The ZBA found that any potential sale was merely speculative and would essentially be a forced sale because a buyer would not pay a fair

---

Compare Brooks v. Cumberland Farms, Inc., 1997 ME 203, ¶ 17, 703 A.2d 844, 849 (finding evidence that the land in question would yield a reasonable return without a variance because of the "numerous permitted and conditional uses for which a variance would not be required"). Also, the ZBA in this case addressed the value of the lot if used for other purposes and found that it would be valueless. (See, e.g., R. at 48.) The ZBA also considered the possibility of using lot 51 for parking, and the Chairman of the ZBA dismissed this idea because lot 51 was better viewed as a residential property than a commercial property. (Id.)

[11] The petitioners ground this argument on dicta from Lewis v. Town of Rockport, in which the Law Court stated that a property could be sold to prevent losing all beneficial use of the land. 2005 ME 44, ¶ 14, 870 A.2d 107, 111. The Court in Lewis noted that evidence of the market value of the property merely allowed for "a reasonable inference" that the landowners could sell the property to another owner. Id. In this case, the ZBA considered the value of lot 51 and found that Adams could not sell lot 51 to another owner at market value without a variance. (R. at 48, 171.)

9

market price for an unbuildable lot. (Id.) See, e.g., Marchi, 511 A.2d at 1073 (holding that "a variance to permit development of a substandard parcel may not be denied solely on the ground that the applicant had an offer of purchase. A landowner has the right to develop his land; he is not required to sell it.") (citing 3 Anderson, AMERICAN LAW OF ZONING § 18.54 at 292 (2d ed. 1977)). Substantial evidence supports the ZBA conclusion that lot 51 cannot yield a reasonable return unless a variance is granted.

3.     Unique Circumstances

The petitioners claim that Ms. Adams failed to prove that the variance was needed due to the unique circumstances of their property. "The unique circumstances requirement is met when the hardship suffered by the lot owner is not a hardship that is common with other lots in the neighborhood." Camp, 2008 ME 53, ¶ 11, 943 A.2d at 598.

The ZBA found, in relevant part:

**B) The need for the variance is due to the unique circumstances of the property:**

Findings of Fact:
1. The lot is uniquely wedge-shaped which results in the shoreland setback line moving the building envelope dramatically to the south.
2. The lot is four times longer than it is wide.
3. The wetlands appear to have encroached onto the building lot over time due to where and how the lot sits on the river at a turn in the shoreline.
4. Despite the shape of the lot, it has a building envelope that is buildable if a variance is granted from the shore setback requirement, while other vacant lots in the area do not have a viable building envelope (e.g. the property to the northwest: Lot UI-50 owned by Summerwind) even if a shoreland variance were granted.

Conclusions:
1. The need for the variance is due to the impact of the new required setback on the unique shape and uncommon condition of the lot.
2. The need for the variance is due to the unique circumstances of the property and not the general condition of the neighborhood.

10

(R. at 171-72.)

The ZBA concluded that lot 51 was a unique lot in the Higgins Beach neighborhood, and based this conclusion on an examination of similar undeveloped lots in Higgins Beach. Implicit in its findings, the ZBA agreed that the vacant lots next to lot 51 are not buildable because they are wetlands, (R. at 46), while lot 51 is composed of dry land. (R. at 43). The ZBA's finding of unique circumstances is similar to the finding of the zoning board in Greenberg v. DiBiase. In Greenberg the zoning board granted a variance from a shoreland setback requirement. 637 A.2d at 1178-79. The Law Court upheld the zoning board's approval of the variance stating: "The record demonstrates that the only other lots in the vicinity of Lot 25 that are of similar size already contain residential structures or wetlands." Id. at 1179. Just as in Greenberg, the ZBA concluded that of the remaining undeveloped lots in Higgins Beach, lot 51 was unique because it was not composed of wetlands and was buildable if a variance from the 75-foot setback was granted.

Contrary to the petitioners' claim, the ZBA did not grant the variance solely on the basis that the lot is unbuilt. Compare Camp, 2008 ME 53, ¶ 13, 943 A.2d at 599 (holding that the lack of a house on the property is not a unique circumstance); see also Waltman v. Town of Yarmouth, 592 A.2d 1079, 1080 (Me. 1991) (that the lot is a substandard size "in itself, is sufficient to support the ZBA's finding that the hardship is not unique to their lot"); Sibley v. Inhabitants of the Town of Wells, 462 A.2d 27, 30 (Me. 1983) ("[T]he mere fact that the lot is substandard is not a unique circumstance; all the undeveloped lots in that neighborhood are of substandard size."). The ZBA found that lot 51 is unique because of the remaining undeveloped properties affected by the 75-foot setback requirement and lot 51 actually has the potential to be built on because it

11

did not contain wetlands. Lot 51 is the exception to an ordinance that affects the Higgins Beach neighborhood generally. The ZBA found that the need for the variance was not due to the general conditions of the neighborhood, but was due to the unique circumstances of the property.

4.    Compliance with the Ordinance

The petitioners also contend that the ZBA's decision must be reversed because the ZBA failed to consider if the proposed structure meets all standards of section 15 of the SZO as required by section 16(G)(2)(c)(1). (Pet'rs' Br. at 12.)[12] Under the Scarborough SZO, "[v]ariances may be granted only from dimensional requirements including but not limited to, lot width, structure height, percent of lot coverage, and setback requirements." (Scarborough SZO § 16(G)(2)(a); R. at 158.) Prior to granting a variance, the Scarborough SZO requires that the ZBA find that "[t]he proposed structure would meet the provisions of Section 15 except for the specific provision which has created the non-conformity and from which relief is sought ..." (Scarborough SZO § 16(G)(2)(c)(1); R. at 158.) Section 15 of the Scarborough SZO provides: "[a]ll land use activities within the shoreland zone shall conform with the following provisions, if applicable." (Scarborough SZO § 15; R. at 143.) Ms. Adams

---

[12] The Town asserts that the petitioners waived this claim when they failed to raise it before the ZBA during the May 13th hearing. The Law Court has stated that in an 80B appeal, issues not properly raised and preserved before an agency may not be raised on appeal. Wells v. Portland Yacht Club, 2001 ME 20, ¶ 5, 771 A.2d 371, 373; see also Oliver v. City of Rockland, 1998 ME 88, ¶ 7, 710 A.2d 905, 907-908. "An issue is considered raised and preserved for appeal 'if there is sufficient basis in the record to alert the court and any opposing party to the existence of that issue.'" Wells, 2001 ME 20, ¶ 5, 771 A.2d at 373 (quoting Farley v. Town of Washburn, 1997 ME 218, ¶ 5, 704 A.2d 347, 349). In this case, the language of the Scarborough SZO specifically requires that the ZBA address whether the proposed structure would comply with section 15. (Scarborough SZO § 16(G)(2)(c)(1); R. at 158.) The petitioners raised this issue on the first appeal. Cottage v. Town of Scarborough, 2010 Me. Super. LEXIS 25, *6. The case was remanded for findings of fact and conclusions. Id. at *11.

12

sough relief from section 15(B)(1) governing setback requirements for principal and accessory structures. (R. at 173.)

The ZBA found that the lot complied with Section 15(A) because it is a non-conforming lot of record under section 12(E)(1). (R. at 173.) The ZBA also found the land use standards governing other requirements for principal and accessory structures, parking areas, roads and driveways, storm water runoff, septic and waste disposal, erosion and sedimentation control, soils, and water quality were applicable in this case. (R. at 173; see Scarborough SZO § 15(B), (F), (G), (I), (J), (P), (Q), and (R); R. at 144-45, 146-49, 154-155.) These standards are based on the development of the land.[13] However, the ZBA recognized that the facts related to these requirements "were not known at the time of the hearing on the variance."[14] (R. at 173.) The ZBA stated:

> The Board finds that any proposed structure would have to be reviewed by the appropriate Town officials (to obtain a building permit) and be in compliance with these provisions. The Board finds that the eventual proposed structure would have to meet these requirements in order to obtain final permission to build from the Town.

(R. at 173.) The ZBA concluded that "[a]ll items in Section 15 of the Shoreland Zoning Ordinance have been met or would have to be met before a structure is constructed on the property, except for the variance for the shoreland setback from Section 15(B)(1)." (R. at 173.) The ZBA approved the variance and noted that the land use standards in section 15 must be met before issuing a building permit. (R. at 173.)[15]

---

[13] The ZBA found that the other requirements of the Scarborough SZO did not apply. (R. at 173.)

[14] It is clear from the transcript of the ZBA hearing on March 10, 2010 and from the findings that the ZBA did not have enough information in front of it to ensure that the proposed structure would comply with section 15. (R. at 106-107.) The ZBA was provided floor plans for the proposed structure and several pictures of the vacant lot. (R. at 21-28.).

[15] When the attorney for the Town suggested that the ZBA add a condition on the variance that a building permit would not issue without full compliance with section 15, the Chairman stated:

13

The ZBA erred as a matter of law when it granted the variance without any facts indicating that the proposed structure would meet the requirements of section 15. The language of the Scarborough SZO mandates that the ZBA make such finding prior to granting a variance, and not a building permit. (See Scarborough SZO § 16(G)(2)(c)(1); R. at 158.) The ZBA inappropriately delegated the decision as to whether the proposed structure would comply with section 15 to the code enforcement officer. (R. at 105.) This is contrary to the language of the Scarborough SZO, which mandates that the ZBA find that the proposed structure would comply with section 15 of the SZO prior to granting a variance.

The Town contends that the ZBA reasonably concluded that the standards in section 15 would have to be met before issuing a building permit. (Town's Br. at 10.)[16] Under the Town's reading, section 16(G)(2)(c)(1) would be rendered surplusage. See Bodack v. Town of Ogunquit, 2006 ME 127, ¶ 12, 909 A.2d 620, 624 ("Rules of statutory construction require zoning ordinances and subdivision standards to be interpreted 'so as [not] to render a provision a surplusage.'") (quoting Kimball v. Land Use Regulation Comm'n, 2000 ME 20, ¶ 26, 745 A.2d 387, 394). Section 16(G)(2) only applies prior to granting variances from dimensional requirements to make the lot "buildable." (Scarborough SZO § 16(G)(2)(a); R. at 158.) The SZO does not grant the Town the authority to delegate its fact-finding duties. (See Scarborough SZO § 16(G)(2)(c)(1); R. at

---

> That's always the case. That's the standard for us. We did that. We always defer to – the exact issue. At the end of the day, the code enforcement officer is responsible for making sure everything is met.

(R. at 105.)

[16] Because most of the land use standards implicated in section 15 are particular to the exact structure, they are unknown at the time an applicant applies for a variance. (Id.) The Town argues that it would be unreasonable to require variance applicants to spend the time and money preparing architectural designs on a proposed structure before knowing whether the land is buildable. (Id. at 10-11.)

14

158 ("The Board shall not grant a variance unless it finds that ... [t]he proposed structure would meet the provisions of Section 15 . . . .").)

There is no competent evidence to support granting the variance because the Town did not consider whether the proposed structure complied with the requirements of section 15 of the SZO. This case is remanded to the ZBA for further proceedings consistent with this decision and order.

The entry is

> Pursuant to M.R. Civ. P. 80B(c), the case is REMANDED to the Town of Scarborough Zoning Board of Appeals for further proceedings consistent with this Decision and Order.

Date: March 18, 2011

Nancy Mills
Justice, Superior Court

15

Date Filed __06-11-09__ _____Cumberland_____ Docket No. ___AP-09-20___
County **CONS. WITH AP09-21**
**ALL FURTHER DOCKETING AND FILINGS**
Action _____80B Appeal_____ **TO BE IN AP09-20**

SUMMERWIND COTTAGE, LLC            TOWN OF SCARBOROUGH
                                  PHYLLIS E. SCALA, TRUSTEE
                                  ERALDA ADAMS


                                        vs.

| Plaintiff's Attorney | Defendant's Attorney |
|---|---|
| John J. Wall, III, Esq.<br>Monaghan Leagy, LLP<br>P.O. Box 7046<br>Portland, ME 04112 | Shana Cook Mueller Esq. (Town)<br>PO BOX 9729, Portland 04104<br><br>~~Phyllis Scala~~<br>~~38 Whipple Farm Lane~~<br>~~Falmouth ME 0410~~5<br><br>Jeffrey Jones, Esq. (Scala & Adams)<br>243 U.S. Route 1<br>Scarborough, ME 04074 |

Date Filed 06-12-09    CUMBERLAND    Docket No. AP-09-21

County

**ABOVE DOCKET # CONS. WITH APO9**
**FILE ALL FURTHER PLEADINGS IN AP     :0**

Action         80B Appeal

PETER CASSAT                    TOWN OF SCARBOROUGH
LIBBY CASSAT                    PHYLLIS E. SCALA, TRUSTEE
                               ERALDA ADAMS a/k/a RALDA ADAMS

vs.

| Plaintiff's Attorney | Defendant's Attorney |
|---|---|
| ANDREW W. SPARKS, ESQ. | SHANA COOK MUELLER ESQ (Town of Scar) |
| NATHANIEL R. HUCKEL-BAUER, ESQ. | |
| ONE MONUMENT WAY | JEFFREY JONES, ESQ. (SCALA & ADAMS) |
| PORTLAND, ME 04101 | 243 U.S. ROUTE 1 |
| | SCARBOROUGH ME 04074 |

Date of
Entry