ENTERED DEC 0 5 2014

STATE OF MAINE
CUMBERLAND, ss

SUPERIOR COURT
CIVIL ACTION
Docket No. AP-14-052
NM-CUM-12-01-14

LANDRY/FRENCH CONSTRUCTION
COMPANY,

Plaintiff

v.

LISBON SCHOOL DEPARTMENT,
LISBON SCHOOL COMMITTEE,
and INHABITANTS OF THE TOWN
OF LISBON,

Defendants

and

LEDGEWOOD CONSTRUCTION, INC.,

Party-in-Interest

ORDER ON PLAINTIFF'S
REQUEST FOR TEMPORARY
RESTRAINING ORDER AND/
OR PRELIMINARY
INJUNCTION

STATE OF MAINE
Cumberland, ss. Clerk's Office

DEC 01 2014

RECEIVED

Before the court is plaintiff's motion for temporary restraining order and/or preliminary injunction. Plaintiff requests the court take the following action: (1) enjoin defendants from executing the contract for the Lisbon High School Gymnasium Renovations and Addition Project (project) to any entity other than plaintiff; (2) enjoin defendants from issuing a notice or authorization to proceed with the work on the project to any entity other than plaintiff; and (3) direct defendants to award the contract for the project to plaintiff. For the following reasons, plaintiff's motion is granted.

A. Background

In September 2014, defendant Lisbon School Department sought requests for qualifications from general contractors for the project. (French 11/12/14 Aff.

¶ 3.) Plaintiff submitted its qualifications to defendant School Department and the project architect, Scott Simons Architects (architect). (Id. ¶ 4.) Plaintiff was prequalified to bid on the project and was added to the list of approved bidders. (Id. ¶ 5.)

Defendant School Department advertised for public bids for the project. (Id. ¶ 6; Ex. A to Petition.) The instructions to bidders required lump sum bids based on plans and specifications issued on behalf of the defendant School Department. (French 11/12/14 Aff. ¶ 7; Ex. B to Petition.) The contract documents, drawings, and specifications for the project were prepared by the architect. (Green Aff. ¶ 3.) Bids were to include a base bid on the project and bids for five alternates, which might be included in the project if funds permitted. (Id. ¶ 6.)

The project is entirely locally funded and has received no contribution from the State of Maine. (Id. ¶ 5; Messmer Aff. ¶ 2.) According to Joseph Oswald, Director of Planning, Design & Construction for the State of Maine Bureau of General Services, 5 M.R.S. § 1743-A applies to this project regardless of whether the project is funded entirely by local funds. (French 11/12/14 Aff. ¶ 14; French 11/12/14 Aff. Ex. 1.)

On or before October 24, 2014, plaintiff submitted its bid for the project, $4,492,187.00, which fully complied with defendant School Department's instructions to bidders. (French 11/12/14 Aff. ¶ 8.) Plaintiff was the low qualified bidder. (Id. ¶ 9; Ex. C to Petition.) Party-in-interest, Ledgewood Construction, Inc., submitted the second lowest qualified bid, $4,567,918.00. (French 11/12/14 Aff. ¶ 10; Ex. C to Petition; Green Aff. Ex. A.) The difference between the base bids of plaintiff and party-in-interest is $75,731.00. (Id.) The

2

difference between the bids of plaintiff and party-in-interest, after consideration of the bid alternates, is $17,136.00. (Green Aff. ¶ 7; Green Aff. Ex. A; Messmer Aff. ¶ 3.)

On October 28, after the bid opening and the day before the School Committee meeting at which the project contract would be awarded, Richard Green, Superintendent for Schools for the Lisbon School Department, and Catherine Messmer, Business Manager of the Lisbon School Department, spoke with Ryan Kanteres, Project Manager for the architect, Darrell Orr, Facilities Director with the Lisbon School Department, and David Lewis, the Owner's Representative on the project. (Messmer Aff. ¶ 4.) After speaking with Mr. Kanteres, Mr. Green "received the impression" that the architect would prefer to work with party-in-interest for a variety of reasons. (Green Aff. ¶ 8.) Specifically, Mr. Green received the following impressions: party-in-interest had a stronger portfolio of experience with school construction in Maine than did plaintiff; party-in-interest had better on-time/on-budget references for its recently completed projects; the working relationship between plaintiff and the architect had not gone smoothly on another project; party-in-interest and the architect had an excellent working relationship on past projects; and plaintiff showed an increase in project cost on alternate 5 for the project while party-in-interest showed a project savings, which Mr. Kanteres believed showed party-in-interest had a better overall understanding of the project scope than did plaintiff. (Id. ¶ 8; Messmer Aff. ¶ 4; Green Aff. Ex. A; Messmer Aff. Ex. A.) Alternate 5 concerned temporary vehicular access at the project site during construction. (French 11/17/14 Aff. ¶ 2; French 11/17/14 Aff. Ex. 1; Messmer Aff. ¶ 4.)

3

Mr. Green conveyed the information and impressions he received from Mr. Kanteres to defendant School Committee at the October 29, 2014 meeting. (Green Aff. ¶ 9; Messmer Aff. ¶ 5.)[1] Defendant School Committee voted unanimously to approve the hiring of party-in-interest for the project because the difference in the lowest and second lowest bids was small compared to the overall cost of the project and because it was in the best interests of defendants not to accept the lowest bid but to hire a contractor with a better working relationship with the architect and better understanding of the project. (Green Aff. ¶¶ 10, 12; Green Aff. Ex. B; Messmer Aff. ¶ 6.)

On October 29, 2014, plaintiff was informed that defendant School Committee, on behalf of defendant School Department, voted to award the contract for the project to party-in-interest. (French 11/12/14 Aff. ¶ 12.) The next day, plaintiff protested the award of the contract and requested that defendant School Committee stay any action with regard to the award of the contract. (Id. ¶ 13; Ex. E to Petition.) Defendants School Committee and School Department did not act on plaintiff's request for a stay and rejected plaintiff's protest. (French 11/12/1/4 Aff. ¶ 15.)

---

1 Plaintiff objected, on the grounds of inadmissible hearsay, to the information from Mr. Kanteres included in the affidavits of Mr. Green and Ms. Messmer. (Pl.'s Reply Mem. 5-6.) At argument, counsel for defendants argued the information was offered only for its "effect on the listener," the members of defendant School Committee. When asked by the court why an affidavit from Mr. Kanteres was not provided, counsel for defendants stated that Mr. Kanteres had not appeared at the October 29, 2014 defendant School Committee meeting.
Defendant School Committee's decision to award the project contract to party-in-interest was based on the School Committee's determination that "it was in the School District's best interest not to accept the lowest bid, but instead to hire the general contractor with the better working relationship with the Architect and a better understanding of the overall project." (Green Aff. ¶ 12; Messmer Aff. ¶ 6.) Thus, the School Committee's action was based squarely on the opinions of a person who did not appear before the School Committee and who offered no testimony to the court.

4

On November 12, 2014, plaintiff filed its Rule 80B petition, which includes count I: Rule 80B review; count II: declaratory judgment; count III: request for injunction; count IV: promissory estoppel; and count V: breach of contract. On the same day, plaintiff filed its request for temporary restraining order and/or preliminary injunction. Defendants filed the opposition on November 14, 2014. Plaintiff filed its reply on November 17, 2014.

A telephone conference with the court and counsel was held on November 21, 2014. During the conference, counsel for party-in-interest represented it will not participate in this lawsuit. Argument on plaintiff's motion was held on November 26, 2014. Plaintiff and defendants were represented by counsel. Party-in-interest did not appear.

B. Procedure

It is not disputed that defendants' award of the project contract to party-in-interest is a final governmental agency action, that plaintiff is an aggrieved party, and, therefore, entitled to review of the defendants' action. See M.R. Civ. P. 80B; Brown v. State, Dept. of Manpower Affairs, 426 A.2d 880, 884 (Me. 1981) (award of contract allegedly in violation of statute was final agency action and plaintiff, as unsuccessful bidder, was aggrieved by agency's decision). When reviewing governmental action under M.R. Civ. P. 80B, the Superior Court reviews the operative decision of the municipality for "abuse of discretion, errors of law, or findings not supported by the substantial evidence in the record." Camp v. Town of Shapleigh, 2008 ME 53, ¶ 9, 943 A.2d 595 (quoting McGhie v. Town of Cutler, 2002 ME 62, ¶ 5, 793 A.2d 504).

C. Standard of Review

Before granting a motion for a preliminary or permanent injunction, the court must find the following have been met:

> (1) that plaintiff will suffer irreparable injury if the injunction is not granted;
>
> (2) that such injury outweighs any harm which granting the injunctive relief would inflict on the defendant;
>
> (3) that plaintiff has exhibited a likelihood of success on the merits (at most a probability; at least a substantial possibility);[2]
>
> (4) that the public interest will not be adversely affected by granting the injunction.

Ingraham v. Univ. of Me. at Orono, 441 A.2d 691, 693 (Me. 1982). "Even if likelihood of success is low, a court might consider injunctive relief based on a very significant showing of irreparable harm." Me. Educ. Ass'n Benefits Trust v. Cioppa, 842 F.Supp. 2d 386, 387 (D. Me. 2012).

D. Discussion

1. Irreparable Harm

Defendants do not dispute plaintiff will suffer irreparable harm if the motion for injunctive relief is not granted. (Defs.' Mem. 4.); see Carroll F. Look Constr. Co. v. Town of Beals, 2002 ME 128, ¶ 7, 802 A.2d 994.

2. Injury to Plaintiff Outweighs Harm to Defendants

Defendants argue they "will suffer significant injury if the injunction is granted because Defendants will not be able to start construction on the project

---

2 "For a permanent injunction, the criterion from Ingraham regarding the merits is more accurately expressed as 'plaintiff succeeds on the merits.'" Fitzpatrick v. Town of Falmouth, 2005 ME 97, ¶ 18, 879 A.2d 21.

as scheduled, which will result in both short term and long term delays." (Defs.' Mem. 8.) This conclusion is not addressed or explained in the affidavits of Mr. Green or Ms. Messmer. Plaintiff argues it "will forever lose the opportunity to have its rights as low bidder vindicated and to perform work that it should have been awarded as low bidder if injunctive relief is not granted." (Pl.'s Mem. 7-8.) As noted, defendants do not dispute plaintiff will suffer irreparable harm.

Plaintiff is a qualified bidder for the project. After oral argument on plaintiff's motion, counsel confirmed, "Landry/French and Ledgewood have each agreed to extend the effective date of their bids for at least an additional 10 days. Accordingly, the earliest date that the bids might expire is December 8, 2014." (Crouter Email dated 11/26/14.) The court understands this to mean that on the date the court's order on plaintiff's motion is filed, either plaintiff or party-in-interest is prepared to proceed with the project work based on the bids submitted. Accordingly, any delay to defendants' project is minimal while potential injury to plaintiff is significant.

3. Likelihood of Success on the Merits

a. 5 M.R.S. § 1743-A

The award of this contract is governed by section 1743-A,[3] which provides:

> Any contract for the construction, major alteration or repair of school buildings involving a total cost in excess of $250,000 . . . must be awarded by competitive bids. The school district directors, school committee, building committee or whatever agency has responsibility for the construction, major alteration or repair shall, after consultation with the

---

3 The parties agree this statute governs the project contract. (Pl.'s Mem. 5-7; Defs.' Mem. 1, 4-6; Pl.'s Reply Mem. 1.)

7

Director of the Bureau of General Services, seek sealed proposals.[4]

5 M.R.S. § 1743-A (2013). The term "competitive bids" is not defined in the context of this statute. Accordingly, the court is required to determine the "plain meaning" of the undefined statutory term and may "rely on definitions provided in dictionaries in making this determination." Apex Custom Lease Corp. v. State Tax Assessor, 677 A.2d 530, 533 (Me. 1996). The business dictionary definition for "competitive bidding" is as follows:

> Transparent procurement method in which bids from competing contractors, suppliers, or vendors are invited by openly advertising the scope, specifications, and terms and conditions of the proposed contract as well as the criteria by which the bids will be evaluated. Competitive bidding aims at obtaining goods and services at the lowest prices by stimulating competition, and by preventing favoritism. In (1) open competitive bidding (also called open bidding), the sealed bids are opened in full view of all who may wish to witness the bid opening.[5]

BusinessDictionary.com, http://www.businessdictionary.com/definition/competitive-bidding.html (last visited Dec. 1, 2014).

Defendants argue "there is nothing in the plain language of § 1743-A that requires such contracts to be awarded to the low bidder." (Defs.' Mem 5.) Defendants rely on a statute from California that specifically requires a contract to be awarded to the "lowest responsible bidder." Cal. Pub. Cont. Code § 20162 (West 2014).[6] But as plaintiff notes, other statutes in Maine expressly permit

---

4 "Competitive bids may be waived in individual cases involving unusual circumstances." 5 M.R.S. § 1743-A. There was no waiver in this case.
5 See "Advertisement for Bids," Ex. A to Petition, §1.2(B) and "Instructions to Bidders," Ex. B to the Petition, § 5.1.
6 Defendants also argue that even when a statute requires an award to the lowest responsible bidder, the bidder must be qualified to perform the contract. (Defs.' Mem.

8

consideration of "other factors" or "valid reasons" other than cost in competitive bidding situations. (Pl.'s Reply Mem. 3 n.2.) For example, the statute governing the contracts for student loan notes are entered "through an open competitive bidding process" and specifically refers to the state contract statute. 20-A M.R.S. § 11407(5) (2013); see 5 M.R.S. §§ 1825-A—1825-J (2013). The statute governing a school board's purchase of insurance is "by competitive bidding," which includes "evaluation criteria and relative scoring weights" to be applied to the prequalification evaluation process and the request for proposal. 20-A M.R.S. § 1001(14)(C)(1)(b) & (C)(2)(f) (2013). The statute governing contracts for wholesale liquor activities provides that contracts are awarded by the commissioner, who "shall choose the best value bidder in conformity with Title 5, section 1825-B, subsection 7 and shall consider as criteria for award the information required to be provided in subsection 4, as applicable." 28-A M.R.S. § 90(5) (2013); see 28-A M.R.S. § 90(4)(A) & (B). The statute governing a contract between a public facility and a contractor for construction of a facility on private property provides the contract "shall be awarded by a system of competitive bidding. Unless there are valid reasons to the contrary, contracts shall be awarded to the lowest responsible bidder." 35-A M.R.S. § 712 (2013). The statute governing a contract between a sanitary district and a contractor for construction of facilities provides the contract "shall be awarded by a system of competitive bidding. Unless there are valid reasons to the contrary, the contracts shall be awarded to the lowest responsible bidder." 38 M.R.S. § 1210 (2013).

---

5.) There is no dispute in this case plaintiff was prequalified to bid on and perform the project contract.

9

In contrast, the statute governing the contract in this case does not include other factors or reasons to be considered; the contract "must be awarded by competitive bids." 5 M.R.S. § 1743-A. The Legislature understands how to further define "competitive bids" and understands how to delineate factors to be considered in competitive bidding situations. The Legislature, by its omission of additional language in section 1743-A, intended the plain meaning of the term "competitive bids" to apply. See State v. Edward C., 531 A.2d 672, 673-74 (Me. 1987) (statute provides that any person can commit gross sexual misconduct; because other statutes specify that the perpetrator must be of a certain age, the Legislature, by omitting a minimum age, did not intend to place an age requirement for gross sexual misconduct).

As plaintiff also observes, because section 1743-A does not include other factors or reasons to be considered in awarding a contract, if the low bid is not dispositive, on what basis does defendant School Committee award the contract? (Pl.'s Reply Mem. 4.); see State v. McCurdy, 2010 ME 137, ¶¶ 1, 16, 10 A.3d 686 (scallop-fishing catch-measurement regulation so vague fishermen required to guess at the meaning and could not determine how to conduct themselves to comply); Kosalka v. Town of Georgetown, 2000 ME 106, ¶ 15, 752 A.2d 183 (ordinance requiring all development to "conserve natural beauty" did not give developers or the zoning board of appeals any guidance on how to interpret the requirement.) Because no "evaluation criteria"[7] were included in section 1743-A,

---

7 The definition of "competitive bidding" referenced above provides: "[t]ransparent procurement method in which bids from competing contractors, suppliers, or vendors are invited by openly advertising the scope, specifications, and terms and conditions of the proposed contract as well as the criteria by which the bids will be evaluated." BusinessDictionary.com
http://www.businessdictionary.com/definition/competitivebidding.html (last visited

10

the contract "must be awarded by competitive bids," which means awarded to the low bidder.

### b. 5 M.R.S. § 1825-A

Defendants' reliance on 5 M.R.S. § 1825-A(3), a statute that, along with nine other subsections, applies to a state contract award, is misplaced. (Defs.' Mem. 5.); 5 M.R.S. § 1825-A (2013). The definition in section 1825-A(3) for "competitive bidding" must be read in the context of the remaining provisions of the statutes in that subchapter that apply to such state contracts. See, e.g., 5 M.R.S. § 1825-B(1) ("The Director of the Bureau of general Services shall purchase collectively all goods and services for the State or any department or agency of the State in a manner that best secures the greatest possible economy consistent with the required grade or quality of the goods or services.").

### c. Instructions to Bidders

Finally, defendants argue they did exactly what the instructions to bidders allowed them to do: hire the contractor defendants determined was in their best interests. (Defs.' Mem. 6-7.) The instructions to bidders provide, in part:

> It is the intent of the owner to award a Contract to the lowest qualified Bidder provided the Bid has been submitted in accordance with the requirements of the Bidding Documents and does not exceed the funds available. The Owner shall have the right to waive informalities and irregularities in a Bid

---

Dec. 1, 2014) (emphasis added). Although the statute, which includes no evaluation criteria, controls, the court notes that the Advertisement for Bids and the Instructions to Bidders do not include any criteria on which the contract will be awarded, other than the "Owner's judgment" and the "Owner's own best interests." (Ex. A to Petition; Ex. B to Petition § 5.3.1.) The Instructions to Bidders do, however, provide, "[i]t is the intent of the Owner to award a Contract to the lowest qualified Bidder" and do specify a method to determine the low bidder. (Ex. B to Petition §§ 5.3.1; 5.3.2 ("The Owner shall have the right to accept Alternates in any order or combination, unless otherwise specifically provided in the Bidding Documents, and to determine the low bidder on the basis of the sum of the Base Bid and Alternates accepted.").)

11

received and to accept the Bid which, in the Owner's judgment, is in the Owner's best interest.[8]

(Ex. B to Petition, § 5.3.1.) Accordingly, defendants argue, the court can interfere with the contract award only on a showing by plaintiff of "fraud, favoritism, or corruption." (Defs.' Mem. 6-7); Dineen v. Town of Kittery, 639 A.2d 101, 102 (Me. 1994). In Dineen, plaintiff was the low but unsuccessful bidder on a contract to transport students to and from school. Id. at 102. The school committee found the higher bidder satisfactory in all aspects but found serious questions about plaintiff's "ability to perform the contract in a safe manner." Id. The school transportation bidding statute requires the school committee to "conserve the comfort, safety, and welfare of the students conveyed." Id. (quoting 20-A M.R.S § 5401(12) (1993)).[9]

The Law Court in Dineen found against plaintiff and determined the school committee had the right and the responsibility to award the contract to a reliable company. Dineen, 639 A.2d at 102. Because the school committee had complied with the applicable statute, the court concluded that, "[a]s a general rule, courts will interfere with a municipal body's award of a contract only if there is fraud, favoritism, or corruption." Id.

In this case, defendants did not comply with the plain meaning of section 1743-A, the applicable statute. No showing of "fraud, favoritism, or corruption" is required. Id.

---

8 To the extent the language of this section is ambiguous, the language would be construed against the drafters of the language. See Barrett v. McDonald Invs., Inc., 2005 ME 43, ¶ 17, 870 A.2d 146 ("A bedrock rule of contract interpretation is that ambiguities in a document are construed against its drafter.").

9 The school transportation statutes do not include a requirement of competitive bids. See 20-A M.R.S. §§5401-5402 (2013).

### 4. Public Interest Not Adversely Affected

Defendants argue that issuing an injunction "would have the effect of overturning a good faith decision made by the locally-elected School Committee, an impact that is clearly adverse to the public interest." (Defs.' Mem 8.) Plaintiff "does not question the process of appointing school board members nor is it challenging the character of these individuals." (Pl.'s Reply Mem. 7.) The public's interest in having defendants follow a statute enacted by the Maine Legislature that applies to this contract far exceeds the public's interest in ratifying a decision of a local school committee.

### E. Conclusion

Plaintiff has satisfied the criteria required for injunctive relief. See Ingraham, 441 A.2d at 693. Because the issue of security was not addressed by the parties in the pleadings or at oral argument, the court has no basis to determine a proper sum for the payment of "such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained . . . ." M.R. Civ. P. 65(c). Further, as stated, plaintiff was a prequalified bidder and the low bidder for the project. Party-in-interest has chosen not to participate in this lawsuit. Accordingly, the giving of security is waived. See id.

The entry is

> Plaintiff's Motion for Temporary Restraining Order and/or Preliminary Injunction is GRANTED.
>
> Defendants are PRELIMINARILY ENJOINED from the following: (1) executing the contract on the Lisbon High School Gymnasium Renovations and Addition Project to any entity other than Plaintiff

13

Landry/French Construction Company; and (2) issuing a notice or authorization to proceed with the Lisbon High School Gymnasium Renovations and Addition Project to any entity other than Plaintiff Landry/French Construction Company.

Defendants are ORDERED to award the contract for the Project to Plaintiff Landry/French Construction Company.

Date: December 1, 2014

Nancy Mills,
Justice, Superior Court

Plaintiff-Robert Ruesch Esq
Defendants-Jerrol Crouter Esq
PII Ledgewood-Mary Delano Esq

14